[S. F. No. 3589.    Department One.—April 3, 1906.]

NAT T. MESSER, Jr., Respondent, v. HIBERNIA SAVINGS AND LOAN SOCIETY, Appellant.

Specific Performance—Contract for Exchange of Land—Amended Complaint — Reformation and Enforcement — Compensation—Cause of Action not Changed.—Where the original complaint sought specific performance of a contract for the exchange of land, an amended complaint seeking to reform the contract, and praying specific performance of the reformed contract, or compensation by way of damages, should specific performance be impossible, did not incorporate a new or different cause of action.

Id.—Different Kinds of Relief.—The seeking of different kinds of relief does not establish different causes of action. A contract may be reformed and specifically enforced as reformed in the same action; and a demand for alternative monetary relief is not subject to the objection that the complaint states two causes of action.

Id.—Title to Strip Conveyed—Adverse Possession—Boundaries of Deed—Tacking not Permitted.—Where the plaintiff established a clear record title to the strip of land conveyed to the defendant, which was not included in the record title of defendant, defendant cannot tack its own possession thereof to that of any previous holder where the land is not included in the boundaries of the deed from such holder, in order to prove title thereto by adverse possession.

Id.—Monetary Compensation—Market Value of Strip—Admission of Pleadings—Bad Faith.—Where the pleadings admitted the market value of the strip agreed to be conveyed by defendant, which had in bad faith conveyed it away, and without restoring the property conveyed, refused to convey as agreed, or to pay any compensation for the title received, such market value was properly allowed as the measure of damages, under section 3306 of the Civil Code.

ID.—JURISDICTION OF EQUITY.—Where, through no fault of the plaintiff
in equity, specific performance cannot be decreed, the court having
obtained jurisdiction of the subject-matter. properly within its
cognizance, will grant, as an alternative, monetary relief, which
in an action strictly at law would be by way of damages.

ID.—OVERLAPPING IMPROVEMENTS—EXCHANGE OF STRIPS—MISTAKE IN
CONTRACT — PROOF — CONSTRUCTION.—Where the improvements on
defendant's lot overlapped part of the lot of plaintiff's assignor,
which conveyed a strip to defendant in consideration of defendant's
agreement to convey a strip of the same area to plaintiff's assignor
to complete title to its frontage of forty feet, but the original
contract called for a conveyance to plaintiff's assignor of the
whole forty feet, which was reformed for mistake therein, and
defendant claimed that the mistake was not sufficiently proved,
equity, independent of the question of mistake, will not permit
defendant wholly to omit performance, because it has promised
to perform more than it ·can or more than is ·necessary, and the
court will interpret the contract so as to be just, reasonable, and
effective, and to express the true intent of the parties, and will
disregard the erroneous parts of the writing.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco.  M. C. Sloss, Judge.

The facts are stated in the opinion of the court.

Tobin & Tobin, and F. S. Brittain, for Appellant.

Dibble & Dibble, for Respondent.

HENSHAW, J.—Plaintiff, as assignee of the Pacific Im-
provement Company, brought his action for the specific
enforcement of a contract for the exchange of land, made
by the Pacific Improvement Company with the defendant.
Such was his original complaint.  Upon demurrer he amended
by pleading mutual mistake in the original contract, sought a
reformation of it, and prayed specific performance of the
reformed contract, or compensation by way of damages should
specific performance be impossible.

It was made to appear that the Hibernia Bank held a
mortgage on a lot owned by one Philip Freund, having a
frontage of twenty-five feet on Market Street in Mission
Block No. 14, which lot was described as commencing two
hundred and twenty-five feet from the corner of Market and

Brady streets; thence running through to Stevenson Street one hundred and twenty-four feet between parallel lines. The bank foreclosed its mortgage upon this property, it was sold by the sheriff, and the bank became the purchaser. Savings banks being forbidden by law to hold property thus acquired beyond a certain time (Civ. Code, sec. 574), the bank sought and found a purchaser in the person of one Simon Clayburg, and an agreement of purchase and sale was entered into between him and the bank. In examining the title to the lot, the attorneys for Clayburg caused a survey to be made, and discovered that the building, supposed to be on the lot, in fact extended over on the side toward Brady Street a distance of seven and one-half feet on land belonging to the Pacific Improvement Company. Clayburg therefore refused to proceed with the purchase. Thereupon a surveyor, Samuel L. Waller, took steps to straighten out the difficulty. He was agent of the bank to the extent that in his negotiations with the Pacific Improvement Company he claimed to represent the bank, the preliminary contract which was drawn up was taken by him to the bank's attorney and bore the initials of that officer, and he presented his bill and was paid by the bank for his services. Waller's surveys convinced him that there had been a general shifting of the buildings toward Brady Street along the Market-Street front of the block at that place, resulting in several encroachments upon as many different lots. The Pacific Improvement Company owned another piece of land in the same block farther out Market Street and farther away from Brady Street. This lot had a frontage on Market Street of thirty-three feet. The company was in possession, however, of only 29.59 feet, owing to the circumstance that the owner of the lot adjoining on the side toward Brady Street, Mrs. Fallon, had herself erected a building which encroached on the Improvement Company's land. After his examination Waller represented that he could adjust the encroachments by obtaining compensating deeds from the various owners between the Freund lot and the Pacific Improvement Company lot last mentioned. He went to the Pacific Improvement Company on behalf of the bank and asked the company to give the bank a deed to the seven and one half feet upon which the Freund building had encroached, and accept in lieu of this a conveyance for an

equivalent amount of land adjoining the outlying lot of the
Pacific Improvement Company. After negotiations between
Waller upon the one hand and C. E. Hayes, representing the
Pacific Improvement Company, a contract was duly executed
by the defendant bank and delivered to the Pacific Improve-
ment Company, whereupon the Pacific Improvement Com-
pany executed and delivered its deed to the bank for the
seven and one half feet adjoining the Freund lot. By the
terms of the bank's agreement with the Pacific Improvement
Company, the former covenanted "to furnish a deed convey-
ing a good title to the following described lot." The descrip-
tion was of a lot with a frontage of forty feet upon Market
Street, embracing, as part of the forty feet, the thirty-three
feet then actually owned by the Pacific Improvement Com-
pany. So that, by the strict letter of its contract, the Savings
Bank agreed to make a deed to the Pacific Improvement Com-
pany which would convey title to thirty-three feet of land
which the Pacific Improvement Company then owned. The
inutility, if not the absurdity, of this is apparent. The
reformation upon the ground of mistake was sought upon the
explanation that what in fact it was agreed that the Savings
Bank should do was to make a conveyance of that portion
of the forty feet to which the Pacific Improvement Company
did not have good title, so as to make to the Pacific Improve-
ment Company a clear and good title to the full forty feet.
This, it appeared, owing to Mrs. Fallon's encroachment, neces-
sitated a conveyance to the Pacific Improvement Company
of 10.41 feet on Market Street running back to Stevenson Street
between radial lines, with a frontage on that street of 6.16 feet
—a piece of land about the superficial area of that conveyed by
the Pacific Improvement Company to the defendant bank,
and of a valuation, as admitted by the pleadings, of over
eight thousand dollars. The complaint, in addition to all
these matters, set up the fact that the bank had no other
title to the seven and one-half feet than that which the
Pacific Improvement Company conveyed to it by its deed, and
that immediately after the reception and recordation of this
deed the defendant bank was enabled to and did complete
its contract of sale with Clayburg, and conveyed this property
to him. Thereafter it refused to carry out its agreement with

the Pacific Improvement Company, either by causing to be executed to it a deed of the 10.41 feet or by making compensation in money.

The answer of the bank consisted of denials of certain of these matters, and an affirmative allegation to the effect that the specific performance of the contract involved and necessitated the performance of personal service upon the part of defendant in the procuring of title to the 10.41 feet which it did not own, and that the contract was therefore nonenforceable in equity. The trial resulted in findings in favor of the plaintiff, and a further finding, in accordance with the allegation of the answer, that the contract was not specifically enforceable for the reasons alleged in the answer, and in lieu of such specific performance the court awarded compensation to the plaintiff in money to the amount of the value of the 10.41 feet as admitted by the pleadings. Defendant appeals from the judgment within sixty days, and the evidence is brought up for review upon the settled statement.

Appellant' first argues that its demurrer to the original complaint should have been sustained without leave to amend, that the amendment incorporated a new cause of action, and that, as the original complaint was verified, the amended complaint was a stultification which should not have been permitted. Of course, it is well settled, and is declared by our code (Civ. Code, sec. 1640), that when, from fraud, mistake, or accident, a written contract fails to express the real intention of the parties, such intention is to be regarded and the erroneous parts of the writing disregarded. Moreover, it is equally well settled (Civ. Code, sec. 3402) that a contract in the same action may be first revised, and then specifically enforced. (*Ward* v. *Watterman,* 85 Cal. 488, [24 Pac. 930]; *Hallam* v. *Corlett,* 71 Iowa, 446, [32 N. W. 449]; *Brugger* v. *Insurance Co.,* 5 Saw. 304, [Fed. Cas. No. 2,051].) And, finally, it is indisputable that where, through no fault of the plaintiff in equity, specific performance cannot be decreed, the court, having obtained jurisdiction of the subject-matter properly within its cognizance, will grant, as an alternative, monetary relief, which in an action strictly at law would be by way of damages. (Fry on Specific Performance, sec. 972; Pomeroy on Specific Performance, sec. 295.) A demand, as in this case, for alternative monetary relief is not obnoxious to

the objection that the complaint states two causes of action. The seeking of different kinds of relief does not establish different causes of action. (*Hutchinson* v. *Ainsworth,* 73 Cal. 452, [15 Pac. 82, 2 Am. St. Rep. 823]; *San Diego Water Co.* v. *San Diego Flume Co.,* 108 Cal. 549, [41 Pac. 495]; Bliss on Code Pleading, secs. 114, 115; Maxwell on Code Pleading, pp. 344, 345.)

Appellant contends against the sufficiency of the evidence to support the finding of mistake in the contract. The execution of the contract by the defendant is not denied. Why the defendant is insisting that there was no mistake, or, in other words, that it deliberately and with knowledge bound itself to convey to the Pacific Improvement Company a frontage of forty feet upon Market Street, title to three fourths of which was at that time in the Pacific Improvement Company, it is not easy to see; and we are as little able to perceive how the contention of appellant in this regard, even if it were sound, would be of any avail in this case. Equity does not exact impossibilities or absurdities, but yet at the same time it will not permit a party wholly to escape performance because he has promised to perform more than he can or more than is necessary; so, without revision of this contract upon the ground of mistake, it might well be that it would be interpreted as binding the defendant to make title to such part of the forty feet as at the time of its execution the Pacific Improvement Company did not own, and this, in effect, is all the revision and reformation called for. The law enjoins that a contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties (Civ. Code, sec. 1643), and that where, through mistake, a contract fails to express the real intention, the erroneous parts of the writing must be disregarded (Civ. Code, sec. 1640). Having in consideration the surrounding circumstances which led to the execution of this contract, and the additional fact that it will not be presumed that the defendant meant nothing by the engagement in writing which it solemnly entered into under its corporate seal, the interpretation which is put upon the contract appears to be just, reasonable, and an accurate expression of the true intent of the parties. It is true that

Mr. Hayes, who represented the Pacific Improvement Company in the negotiations, testifies there was no mistake so far as he was concerned, "though legally there might be one"; but this statement is qualified and explained by his whole testimony, which shows that what he was endeavoring to express and secure was a good title to so much of the forty feet as the Pacific Improvement Company might be shown not to own.

The plaintiff established a clear record title to the seven and one half feet which it conveyed. The defendant, however, to controvert the allegation that it had no other title when it conveyed to Clayburg than that which it received from the Pacific Improvement Company (an allegation directly affecting the consideration of its contract and the value of the title which it received from the Pacific Improvement Company), undertook to show title in itself to the seven and one half feet by adverse possession. The finding of the court was against it upon this proposition, and that finding may not be disturbed. It was shown that the defendant had no knowledge that the Freund building stood seven and one half feet over on the lands of the Pacific Improvement Company. The sheriff's deed, by which the bank took, following the foreclosure sale under the Freund mortgage, described the lot, excluding the seven and one half feet. So, even if it could be said that Freund knew that he was encroaching upon the land of the Pacific Improvement Company, and this is not in evidence, the defendant, by reason of the limitations in its deed, cannot avail itself of such knowledge in its claim of adverse possession. "A claimant of land by adverse possession cannot tack to the time of his possession that of a previous holder, where the land is not included in the boundaries in the deed from such holder." (*Vicksburg R. R. Co.* v. *Le Rosen,* 52 La. Ann. 192, [26 South. 854].)

The contention that the monetary compensation in lieu of specific performance which was decreed is unconscionable is without support. The value of the property is admitted, and if in the award of monetary compensation in lieu of specific performance equity follows the law as to the rule of damages, the award here made was not in conflict with section 3306 of the Civil Code bearing upon the matter. That section declares that where there has been bad faith the market

value of the property contracted to be conveyed is the measure of the damages for the breach of the agreement. The market value of this property was established, and there was justification for the award upon the ground of bad faith, in consideration of the fact that the defendant promptly accepted the deed made to it by the Pacific Improvement Company, and that this title so acquired was immediately conveyed to Clayburg, and that after doing this, without an offer to restore the title which it took, it refuses, in turn, to pay any consideration for what it had accepted.

No other matters seem to call for consideration, and for the foregoing reasons the judgment appealed from is affirmed.

McFarland, J., and Lorigan, J., concurred.