[Civ. No. 3305.  Third Appellate District.—October 25, 1927.]

IRENE SANER, Appellant, v. N. A. KNIGHT et al., Defendants; NOAH C. CREWDSON, Respondent.

Ira B. Langdon and Paul D. Dexter for Appellant.

Berry & Watson for Respondent.

BURROUGHS, J., *pro tem.*—This action was brought under the provisions of section 749 of the Code of Civil Procedure to determine all adverse claims to the land described in the complaint. The action was originally entitled *"Irene Saner, Plaintiff, vs. N. A. Knight, and All Persons Unknown, etc., Defendants."* There was no appearance by any person claiming to be a defendant and on September 8, 1924, upon the evidence presented by the plaintiff, the court entered its judgment in favor of the plaintiff as to all of

the said land. On May 18, 1925, after appropriate proceedings for that purpose, Noah C. Crewdson appeared in the action and filed an answer denying plaintiff's ownership to the easterly fifty feet of lot 12 of block 1 of Thomas' New Addition to the town of Woodbridge, said parcel of land being a portion of the land described in plaintiff's complaint. He also filed a cross-complaint alleging ownership by prescription of said easterly half of lot 12 and asking that his title thereto be quieted as against the said plaintiff. The issue thus raised was tried by the court and findings and judgment entered in favor of the said defendant and cross-complainant. This is an appeal by the plaintiff from said judgment and from the order denying her motion for a new trial.

The court made the following finding of fact: "That said defendant and cross-complainant, Noah C. Crewdson, has, by himself and his predecessors in interest, been in the actual, exclusive and adverse possession of the real property described in his cross-complaint herein, continuously for twenty years prior to the filing of the plaintiff's complaint herein, to and including the present time, claiming to own the same in fee against the whole world."

It is appellant's contention that the foregoing finding is not warranted by the "law or the evidence." However, an examination of the record discloses the fact that this finding is not only warranted, but the little evidence there is to the contrary is so palpably weak that it can hardly be said to raise a conflict.

The facts are that lots 8, 10, and 12 of block 1 of Thomas' New Addition to the town of Woodbridge are located in the northeasterly corner of said block 1, said block lying adjacent to Indiana Street on the north and Orange Street on the east. It is not disputed that lot 8 of said block is owned by the defendant and cross-complainant Crewdson. It has a frontage on Orange Street.

Lot 10 is owned by the plaintiff and lies to the west of and adjoining lot 8. Lot 12 is an irregular shaped tract of land lying to the north of, and is directly in front of and adjoining, both lots 8 and 10. Lot 12 extends to Indiana Street on the north and Orange Street on the east. The westerly half of said lot 12 has been for many years past, and now is, used in connection with lot 10 owned by

the plaintiff,—in fact, plaintiff's house is partly on the westerly half of lot 12 and partly on lot 10, and it is not disputed that this portion of lot 12 belongs to the plaintiff. The easterly fifty feet of said lot 12 has been, and now is, used in connection with lot 8. The house of the cross-complainant is situated partly on lot 8 and partly on the easterly fifty feet of lot 12.

It was stipulated by both parties that said lot 12 had not been assessed nor any taxes levied thereon for more than twenty years prior to the filing of the complaint in this action.

The testimony shows that at least as early as 1905 there was a line fence between lots 8 and 10 and that it extended across lot 12 to Indiana Street, and thence along Indiana Street in an easterly direction to Orange Street and southerly along the latter street to an old barn on the back of lot 8. It is true that at times this fence was broken down in places and was not kept in very good repair, but nevertheless it existed and was sufficient at all times to show that lot 8 and the easterly fifty feet of lot 12 were in one inclosure.

The evidence also discloses that the easterly fifty feet of said lot 12 has been used continuously since 1904 in connection with and as a part of lot 8; that the children of the people who occupied the house on lot 8 used it for a playground and that a Chinaman who occupied the house for about three years used the lot as a place for drying almonds, and that after the cross-complainant had purchased the property early in the year 1921, he employed a man named Davis, whose wife was then the owner of lot 10, to plow and level the easterly fifty feet of lot 12. Said cross-complainant also renewed the fence between lots 8 and 10 and dividing lot 12, and around the exterior boundary of lot 8 and the easterly fifty feet of lot 12, and planted fruit trees on all of said land. This was all done with the knowledge of the owner and the occupants of lot 10 and without any objection on their part. When Mrs. Davis, the owner of lot 10, conveyed it to plaintiff, who is her daughter, lot 12 was not described in the deed and according to the testimony of the plaintiff the latter did not know of the existence of lot 12, she believing that lot 10 extended to Indiana Street. When cross-complainant Crewdson bought the

property described in his cross-complaint from Mrs. Kyber, his predecessor in interest, Mrs. Kyber told him lot 8 extended to Indiana Street.

As against this testimony there are some contradictions as to the fence having been in existence at the times testified to by the cross-complainant and his witnesses. There is also some testimony that occasionally Davis, the father of the plaintiff, who for a short time was engaged in street sprinkling, parked his sprinkling wagon on the east half of lot 12; that at times he staked his milk cows thereon, and occasionally cut some grass there. Davis also testified that he plowed and leveled the easterly portion of lot 12, but the evidence is satisfying that this was done under the employment of the cross-complainant, who paid him for the work.

The plaintiff was asked on cross-examination when she discovered that there was such a piece of land as lot 12 in block 1. She replied that it was three years previous when she wanted to sell it, discovering it then from the abstract of title, and thereafter commenced this action to quiet her title thereto. After obtaining the original judgment in this action plaintiff, on November 9, 1924, wrote a letter to the cross-complainant demanding that he remove his fences from lot 12 and stating to him "you are no longer in possession of it." This was the first intimation she ever gave the cross-complainant that she claimed any title to the land in dispute, and it was a clear recognition of the cross-complainant's possession.

The evidence is overwhelming that the plaintiff's claim to this land was an afterthought based upon her discovery that there was such a piece of land as lot 12, and her claim to that portion of the Crewdson land as lies within the latter's inclosure is without merit.

It is further contended on behalf of appellant that the judgment is erroneous because in extending to cross-complainant Crewdson the benefit of adverse title the court was compelled to tack successive adverse possessions and that no priority of title was shown to exist between said cross-complainant and the former adverse occupants. Many cases are cited by appellant in support of this view and there is no doubt that the law as cited is sound. (*Allen* v. *McKay & Co.*, 120 Cal. 332 [52 Pac. 828], and *Messer* v.

*Hibernia Sav. & Loan Society,* 149 Cal. 122 [84 Pac. 835].) But record title in the case at bar shows a conveyance of lot 8 to Blanchie Frazier, January 12, 1905. That in 1910 the latter conveyed said lot to Stella Kyber and the latter conveyed the same to cross-complainant Crewdson in 1921. On July 23, 1925, Blanchie Frazier made a correction deed to Stella M. Knight, formerly Stella M. Kyber, of said easterly half of lot 12 of block 1, and the latter, on July 28, 1925, made the same character of deed to cross-complainant Crewdson, both of these deeds containing a recital that the parcel conveyed had been inadvertently omitted from the original deed. These deeds remedied the defect complained of by the appellant herein and clearly bring the case within the rule laid down in *Allen* v. *McKay & Co., supra,* and *Messer* v. *Hibernia Sav. & Loan Society, supra.*

Appellant urges that respondent did not offer proof at the trial that Stella M. Knight was in the possession of the disputed land and therefore she must connect her paper title with the patentee. A large number of cases are cited in support of this view and the principle of law thus cited by counsel is sound, but is not applicable to the facts of this case for the reason that all of lot 8 and the easterly half of lot 12 were under one inclosure in 1904 and were rented to tenants by Dr. Brown, the predecessor in interest of Blanchie Frazier, and that the former conveyed lot 8 of said premises to the latter, and that during the ownership of said Blanchie Frazier the premises were occupied by her tenants, and that after she conveyed the title to Stella Kyber the latter also occupied the said premises through her tenants.

We are of the opinion that this sufficiently establishes the twenty-year period of occupancy required by section 749 of the Code of Civil Procedure, but even if the evidence was held to be insufficient to establish the twenty-year period required by section 749 of the Code of Civil Procedure, cross-complainant has clearly established that he and his predecessors have been for many years last past, and that at the time of the filing of the plaintiff's complaint and at the time of the trial he was, in the actual and exclusive possession of the land in controversy, and as against the plaintiff, who was never in possession, nor ever had a record title to said land, and is a stranger to the title, she

cannot complain of the judgment, for, as held in *Davis* v. *Crump*, 162 Cal. 513 [123 Pac. 294], as against an entire stranger to the title, actual possession of lands has uniformly been held in actions to quiet title to make out a *prima facie* case of ownership and sufficient to support a judgment.

There is also another reason why the plaintiff cannot prevail in this action and that is because the proof on behalf of the cross-complainant is sufficient to establish more than five years' adverse possession under the provisions of sections 321 to 325 of the Code of Civil Procedure, and the allegations of the cross-complaint are broad enough under the provisions of section 738 of the Code of Civil Procedure to sustain the judgment herein.

In *Faxon* v. *All Persons, etc., et al.*, 166 Cal. 707 [L. R. A. 1916B, 1209, 137 Pac. 919], and *Ernst* v. *Tiel*, 51 Cal. App. 747 [197 Pac. 809], it is held that where an action is brought under the provisions of section 749 of the Code of Civil Procedure, and the issue of title is raised by the pleadings of the parties and is properly before the court for determination, the court, upon proof may render judgment quieting plaintiff's title to the property under the general provision of law relating to actions of that character, although the proof is not in strict accordance with section 749 of the Code of Civil Procedure.

Plaintiff's next contention is that the court erred in not receiving in evidence the patent from the United States to W. E. Green, county judge of San Joaquin County, in trust for the benefit of the occupants of the- town site of Woodbridge, which, according to the claim of appellant, includes the easterly fifty feet of lot 12 of block 1, the objection being that the record title would thus be shown to rest in the county judge and his successors, for the public uses therein designated, and that no adverse title could be acquired thereto by an individual.

We are not called upon to pass upon this question because the public is not here complaining, and it is no concern of the appellant for the reason that the trial court has found that the parcel of land in controversy was at all times in the possession of the cross-complainant and his grantors and plaintiff has no title thereto. Plaintiff's principal reliance in support of the foregoing point is the case of

*Placer County et al.* v. *Lake Tahoe Ry. Transp. Co.*, 58 Cal. App. 764 [209 Pac. 900]. But in that case the facts are that a public commons had been legally dedicated to public use and therefore became the property of the public and the county of Placer was the plaintiff, and it was there held that as to such a parcel of land title by prescription could not be acquired against the public.

The case of *Tripp* v. *Duane,* 74 Cal. 85 [15 Pac. 439], while not directly in point, is somewhat analogous, and it is there held that in an action to quiet title a defendant against whom the plaintiff's title is properly quieted to an undivided interest in the premises cannot object, on an appeal taken by himself alone, that the decree as against the other defendants not appealing quieted plaintiff's title to a greater extent than was justified by the evidence.

▮ The last contention that we are called upon to answer is that the court erred in not receiving evidence of the patent which was offered by the plaintiff, it being offered for the purpose of disqualifying the trial judge and arises upon the following offer of evidence: ·

"Mr. Langdon: We will introduce testimony . . . to show the title to this property in point, lot 12, and the only existing title we are able to show, the only registered title, stands in the Judges of San Joaquin County . . . and that patent to this land was issued to the Judges of San Joaquin County and their successors, which would disqualify the Judge of San Joaquin County to hear and try this case."

It further appears from counsel's offer of proof that the patent referred to was issued "in trust for the benefit of the occupants of the town site of Woodbridge." This offer of evidence was refused and is now assigned as error. In support of his contention appellant cites *Lindsay-Strathmore Irr. Dist.* v. *Superior Court,* 182 Cal. 315 [187 Pac. 1056], but in that case it was held that the trial judge, through ownership in his own right of a parcel of land, held a direct interest in the water underlying it, which was the subject matter of the litigation, and that it was immaterial how small that interest might be, it was sufficient to disqualify the trial judge.

In the case at bar the interest of the trial judge, if in fact there was any interest, was only that of a successor of the trustee for the occupants of the town site, and, as said

in *Oakland* v. *Oakland Water Front Co.*, 118 Cal. 249 [50 Pac. 268], where the question of disqualification involved was that of the judge being a taxpayer of the city and might benefit by a diminution of taxes as the result of revenue to be derived from the waterfront, the subject matter of the litigation, in case of the success of the city, the word "interest" as used in section 170 of the Code of Civil Procedure embraces only a direct, proximate, substantial, and certain interest in the result of the action. In the language used by Judge Olney in his concurring opinion in *Lindsay-Strathmore Irr. Dist.* v. *Superior Court, supra,* the judge's "right, if he has any, is purely theoretical and his so-called interest is not a thing of reality."

Under the circumstances it does not appear that, even though the court had permitted the introduction of the evidence offered and there had been no rebuttal thereof, the interest of the trial judge, as shown by such evidence, would have disqualified him. There was therefore no error in rejecting the testimony.

We have examined each of the assignments of error and in our opinion they are without merit.

The judgment is therefore affirmed.

Plummer, J., and Finch, P. J., concurred.