[Sac. No. 5362.  In Bank.—August 9, 1940.]

WARD REDWOOD COMPANY, INC. (a Corporation), Respondent, v. Mrs. JENNY B. FORTAIN et al., Appellants.

36

Arthur A. Jones for Appellants.

T. F. Peterson for Respondent.

SPENCE, J., *pro tem.*—This is an appeal by defendants from a judgment in favor of plaintiff in an action in ejectment.

The controversy involves the plaintiff's claim of ownership and the right to possession of approximately 44 acres of land located in the shifting lowlands at the mouth of the Klamath River. Most of this land has been added to other land by accretion.

Plaintiff deraigns its title through a patent from the United States issued in the year 1898. It was stipulated upon the trial that the record title to the land described in said patent was in plaintiff and that said land was described as follows: "Commencing at a point five chains north of the southeast corner of lot numbered Two of section eight in Township Thirteen North of Range one East of Humboldt Meridian, thence West twenty chains, thence north to Klamath River,

thence up said river to line between Lots numbered One and Two of said Section, thence south to the place of beginning.'' Defendants apparently deraign their title through a patent from the United States issued at approximately the same time but our attention has not been called to any evidence showing the description of the land as found in said patent. It appears to be conceded, however, that defendants were the owners of the land, including lot 1, in the vicinity of plaintiff's land and to the east of the line dividing lots one and two.

We shall endeavor to give a brief description of the so-called disputed land, and in doing so, we will describe the general situation in the vicinity as it existed at or about the time of the trial in 1939 and will thereafter return to the disputed claims concerning the situation as it existed in 1898 when the patent to plaintiff's land was issued.

The Klamath River runs in a general westerly direction as it empties into the Pacific Ocean. There is a long sand spit near the mouth of the river, which sand spit extends southward from the mouth of the river to the mainland, being a distance of approximately two-thirds of a mile. This sand spit, which is several hundred feet in width, encloses an arm of the river or a bay which is comparable in length and width to the sand spit. The land in dispute lies along the easterly side of this bay and to the north of a slough, which slough runs in an easterly direction from a point on the easterly side of the bay approximately midway between the southerly end of the bay and the river. Said slough is approximately 92 feet wide and, as it runs easterly for about three-fourths of a mile from the bay to the head of the slough, its direction is substantially parallel to that of the river. From the head of the slough, it is about one-fourth of a mile in an easterly direction to the river. In other words, the land in dispute is at the westerly end of a strip of land approximately one mile in length, which strip lies between the river and the slough above mentioned and is connected with land at the easterly end by a strip approximately one-fourth of a mile wide.

There is but little difficulty encountered in describing some of the lot lines above mentioned with relation to the land above described. Lots one, two and three all have their southerly boundary along a line running in an easterly and

westerly direction through a point slightly north of the southerly end of the bay and some distance south of the mouth of the slough. Lot three is the most westerly lot. It is adjoined on the east by lot two, which is in turn adjoined on the east by lot one. The line dividing lots three and two runs in a northerly and southerly direction along the sand spit while the line dividing lots two and one runs in a northerly and southerly direction through a point about 600 feet east of the mouth of the slough. It was therefore a simple matter for the trial court to locate the easterly, southerly and westerly lines of plaintiff's property but one of the main problems presented to the trial court was that of determining the location of the northerly line of said property which was described in the patent as commencing where the westerly line met the Klamath River and then running up said river to the line between lots one and two.

Some further description should be given of the general situation in these lowlands. From measurements taken at the time of the trial, it appears that all the land in immediate vicinity of the disputed land is very flat and of very low elevation. The elevations at various points were measured from low water in the slough and it was found that the highest points in the vicinity were two points, each 12.4 feet above such low water, which two points were located on the dividing line between lots one and two and about equidistant a few hundred feet to the north and south from the slough. The disputed land and much of the land in the vicinity is covered with several feet of water during the heavy seasonal flow of the river and no permanent structures have been built on such land. Some temporary structures have been placed thereon at times in order to cater to sportsmen who fish near the mouth of the river but any such structures which have been placed there in any year have been removed during the same year before the heavy flow. The action of this heavy flow each year, together with the action of the normal flow and of the tides, has resulted in changing the nature of the land in this vicinity. Some marked changes have developed in seasons of extremely heavy flow and other changes have developed more gradually. Prior to 1930, the mouth of the river was at its present location at the north end of the sand spit. Following 1930 and until 1935, the river appears to have emptied through the bay and at the south end of the

sand spit. In 1935, a wing dam was placed across the north end of the bay and thereafter the mouth of the river was again located at the north end of the sand spit. The disputed land has developed from a gradual accretion at the west end of the strip between the river and the slough.

Plaintiff brought this action claiming ownership and the right of possession of "All of lot 2 except the south five (5) chains thereof in Section 8 Township 13 North, Range 1 East, Humboldt Meridian." It was apparently plaintiff's theory that the description in its patent covered all of the disputed land or at least the part of the land north of the slough and west of the line dividing between lots one and two to which the disputed land was an accretion. On the other hand, it was defendants' theory that the description in said patent covered none of the land north of said slough; that in 1898 all the land then existing north of the slough constituted an island completely surrounded by the river and the slough; that defendants and their predecessors owned all of said island and therefore defendants were owners of all accretions thereto. Evidence was presented by the parties in the trial court in support of their conflicting theories and the trial court found in favor of plaintiff and against defendants on the issues thus presented. The trial court also found in favor of plaintiff on the issue of the statute of limitations and entered its judgment accordingly.

Before considering the contentions of defendants on this appeal, it is appropriate to state that there have been filed in this court three applications to take additional evidence under section 956a of the Code of Civil Procedure, one application having been filed by plaintiff and two applications having been filed by defendants. Plaintiff's application sought to introduce evidence relating to the corporate existence of plaintiff and its right to do business in the county of Del Norte. Through an oversight, no evidence was presented on this issue in the trial court. Defendants' two applications sought to introduce (1) evidence consisting of a photostatic copy of a United States Coast and Geodetic Survey map of 1874 and (2) certain evidence on the question of the assessment or nonassessment of the disputed land for the purpose of taxation. At the hearing of the cause, a written stipulation was entered into by the parties purporting to dispose of all of these applications except defendants' application to

introduce the map of 1874. That application was argued and submitted with the cause on the merits. We will discuss these matters further as the occasion may require.

■ Defendants' several contentions on the principal issues involved are but statements in different forms of the claim that the evidence was insufficient to sustain the findings on said principal issues. They cite and rely on *Packer* v. *Bird,* 71 Cal. 134 [11 Pac. 873]; *Fillmore* v. *Jennings,* 78 Cal. 634 [21 Pac. 536], and other cases involving boundary lines and accretions. Their theory is that in 1898, the strip of land, to which the disputed land is an accretion, was an island, owned in its entirety by their predecessors in interest. The real question here is whether there was any substantial evidence presented to sustain the trial court's findings to the contrary.

Several maps were introduced in evidence, including a United States government map referred to as the map of 1886, together with field notes made for the preparation of said map and the running of the southerly meander line along the river. Said United States government map of 1886 distinctly shows that the land north of the slough was not an island. The field notes so indicate and they further indicate that there was land north of the slough and west of the line dividing lots one and two. While defendants concede that the description in the patent under which plaintiff claims carried plaintiff's easterly and westerly lines in a northerly direction to the Klamath River as it existed in 1898 rather than to the meander line, the evidence shows that the meander line then established ran across the sand spit and bay in a direction slightly south of easterly to a point just south of the mouth of the slough and then turned sharply in a northeasterly direction and crossed the line between lots one and two at a point well to the north of the slough and then proceeded in a generally easterly direction along its irregular course. In our opinion the trial court could properly conclude from the above-mentioned evidence that the land acquired by defendants' predecessor in 1898 did not constitute an island but did constitute the major portion of a peninsula; that the westerly end of said peninsula was to the west of the line dividing lots one and two and within the calls of the description found in the patent through which plaintiff deraigned title; and that plaintiff was therefore the owner

of the westerly end of said peninsula and of all accretions thereto. There was therefore no question of permitting plaintiff to "jump a slough", as stated by defendants, and of claiming accretions which were not contiguous to plaintiff's land. A reading of the record leads us to the conclusion that there was sufficient evidence to sustain the above-mentioned findings of the trial court on the principal issues.

At this point we will consider defendants' application to this court to take additional evidence with respect to the said principal issues by admitting the map of 1874. A photostatic copy of said map was filed in support of the application. Without discussing plaintiff's objections to the admission of said map in evidence in this court, we have concluded to admit it in evidence and to consider it for whatever it may be worth. We do not believe, however, that it is in any way decisive of this appeal. Said map is one on file in the United States Coast and Geodetic Survey and is not one of the maps on file in the General Land Office of the Department of the Interior with respect to which patents are issued. While said map of 1874 indicates that the land north of the slough was an island in 1874, the field notes above referred to and the map of 1886, which was prepared therefrom and filed in the General Land Office, show that it was not an island at that time. Furthermore, said map of 1874 shows no township, section or lot lines and there is therefore nothing contained on said map to indicate that, even at that time, there was no land north of the slough and west of the line dividing lots one and two. The relationship of anything found on the map of 1874 to the issues here involved is very remote and inconclusive. This is particularly true in the light of the admittedly changing nature throughout the years of the lands in and about the mouth of the river. It must be conceded that there was evidence to show that in earlier years rowboats could at times be rowed around the alleged island, at least when the water was high. It is admitted by all, however, that there has been no waterway of any description connecting the present head of the slough and the river on the east at any time during the past thirty years. Under the circumstances above set forth, it does not appear appropriate for this court to make other and different findings on the above-mentioned issues from those made by the trial court or

to reverse the judgment with directions as requested by defendants.

Before concluding the discussion relating to the principal issues, it should be stated that defendants make the further contention that the court erred in denying their motion to strike certain testimony of Mr. Malpas, the county surveyor of Del Norte County. They state that the testimony referred to was "incompetent and unlawful testimony" as the witness gave his opinion that "all the accretion . . . belonged to respondent". We find no such testimony in the record. The witness had made certain maps showing the vicinity of the mouth of river in 1935 and in 1939. These maps were introduced in evidence without objection. The witness was asked to outline in red pencil on one of the maps the lands described in the patent through which plaintiff deraigned title. He purported to do so but thereafter admitted that he had no knowledge of the conditions as they existed in 1898. The trial court denied the motion to strike said portion of the witness' testimony reserving to defendants the right to argue the point later. We find no prejudicial error in the trial court's ruling. The cause was tried by the trial court sitting without a jury and there is nothing to indicate that the testimony to which the motion to strike was directed influenced the trial court in the determination of the issues before it.

In view of our conclusion that the trial court found upon sufficient evidence that plaintiff was the owner of the land to which the disputed land was an accretion and that plaintiff was therefore the owner of said accretion, we may now proceed to a consideration of defendants' contention that the trial court erred in finding against defendants on their plea of the statute of limitations. (Code Civ. Proc., sec. 318.) They state that they proved "by a preponderance of the evidence" that they were entitled to the disputed land by adverse possession but we must assume that defendants' real contention is that the evidence was insufficient to sustain the trial court's finding against them on this issue. We find no merit in this contention.

As plaintiff had established its legal title to the disputed property, it is presumed that it was in possession thereof within the time required by law and that any occupation thereof was in subordination to the legal title unless it ap-

peared that the property was held and possessed adversely to such legal title for five years before the commencement of the action. (Code Civ. Proc., sec. 321.) The elements and requisites of adverse possession are well understood (1 Cal. Jur. 522 et seq.), and the burden of proof was upon defendants to prove all of those elements and requisites. (1 Cal. Jur. 636.) One of such elements was the payment by defendants or their predecessors of all the taxes which had been levied and assessed upon such land. (Code Civ. Proc., sec. 325.)

The evidence is uncontradicted to the effect that defendants made some use of some of the disputed land during some of the period of approximately ten years prior to the commencement of this action. The disputed land was adjoined on the east by land of defendants and it does not appear that any fence was ever erected on the dividing line between lots one and two or at any other place on the disputed land. Some use of the disputed land was made by defendants and their tenants for pasturage during certain seasons. Some of said land was also used by them during certain seasons for the placing of temporary structures thereon for the purpose of catering to fishermen. Some use was also made by them of a few acres of the disputed land for the purpose of raising crops but this use was soon abandoned. It is further claimed by defendants that in 1931, they leased a portion of the disputed land to the county of Del Norte for use as an emergency landing field, but the testimony of the county surveyor shows that the land so leased was entirely in lot one and to the east of the disputed land. Disregarding for the moment the element of the payment of taxes, we may state that we doubt whether defendants' evidence relating to the other elements and requisites of adverse possession, even though uncontradicted, was such as to compel the trial court to find in their favor with respect to such elements and requisites. But in any event, there was no showing made by defendants in the trial court with respect to the payment of taxes and the trial court was therefore entirely justified in finding against defendants on their plea of the statute of limitations. (Code Civ. Proc., sec. 325; *In re Dixon*, 120 Cal. App. 635 [8 Pac. (2d) 881]; *Redemeyer* v. *Cunningham*, 61 Cal. App. 423 [215 Pac, 83].)

44

■ This brings us to defendants' second application to take additional evidence in this court. As above stated, this application relates to the question of the assessment or non-assessment of the disputed land for the purpose of taxation. Plaintiff has not resisted this application and the parties have purported to stipulate to the facts concerning which defendants sought to introduce additional evidence. Under the circumstances we deem it appropriate to grant the application and to accept the stipulated facts for whatever value they may have. We do not believe, however, that these facts are sufficient to justify the making of findings by this court different from the findings made by the trial court or to justify the reversal of the judgment with directions as urged by defendants.

■ The stipulation recites that the accretion was never assessed ''by its description''; that plaintiff contends as a matter of law that when it paid taxes on the lands described in its deed, it automatically paid taxes on the accretion; that defendants contend as a matter of law that to be considered as assessed for taxes said accretion ''would of necessity be specifically described by metes and bounds'' on the assessor's records; and that the question of the assessment or non-assessment of the accretion is ''submitted on these facts as a matter of law for this court to decide''.

The parties have neither argued the question of law thus submitted nor presented any authorities with respect thereto. We are of the opinion, however, that defendants' contention cannot be sustained. We know of no requirement that any land must be specifically described by metes and bounds on the assessment roll so long as it is otherwise sufficiently described. Nor do we know of any requirement that any particular portion of an entire tract of land owned by one landowner should be assessed by ''its'' description. The peculiar difficulties which would be encountered by the imposition of such requirements are well exemplified here. The testimony here shows that the accretion has formed in the usual manner by ''imperceptible degrees'' (Civ. Code, sec. 1014) along the irregular, shifting bank of the river. We are of the view that as a matter of law, the levy and assessment of taxes each year upon the land upon which the accretion was formed should be held to result in the levy and assessment of taxes upon the accretion. Under this view, taxes were levied and

assessed each year upon the accretion and, as defendants admittedly paid none of said taxes, they have failed to prove one of the essential elements of adverse possession. (Code Civ. Proc., sec. 325.)

█ In defendants' opening brief they made the contention that the evidence was insufficient in that there was no evidence to show plaintiff's corporate existence or its right to do business in the county of Del Norte. Since the filing of said brief, plaintiff has made its above-mentioned application to take additional evidence in this court. Defendants did not resist said motion and the parties have entered into a stipulation regarding the facts. We deem it appropriate to grant said application and to consider the stipulated facts. These facts supply the deficiency in this regard in the evidence and it appears that defendants have now abandoned the contention previously made.

█ The final contention of defendants is that the trial court erred with respect to their motion to strike certain items from plaintiff's cost bill. The aggregate of the items in dispute appears from defendants' reply brief to be $17. The record before us fails to show the entry of costs in any amount in the judgment. It further fails to show any order of the trial court with respect to defendants' motion or any appeal from such order, if any order was in fact made. It is therefore impossible for this court to consider this contention on this appeal.

As above indicated, the several applications to take additional evidence are granted and the additional evidence on file herein by stipluation or otherwise is admitted. For the reasons above stated, the judgment is affirmed.

Shenk, J., Curtis, J., Gibson, C. J., and Carter, J., concurred.

Rehearing denied.