[Sac. No. 5842. In Bank. Aug. 24, 1948.]

ERNEST T. SORENSEN, Respondent, v. MANUEL COSTA, Appellant.

Ernest C. Crowley for Appellant.

Morse & Richards and Stanley C. Smallwood for Respondent.

TRAYNOR, J.—Appellant, Manuel F. Costa, appeals from a judgment in favor of plaintiff and respondent, Ernest T. Sorensen, determining the latter to be the owner of a lot described as "The Westerly one-half of Lot 7, Block 51, Benicia, California, as the same is laid down and delineated on the Official Map of the City of Benicia."

According to the evidence and the findings of the trial court, this litigation arose out of a "general mistake existing as to the proper description of several lots lying in and 'upon block fifty-one as shown on the Official Map of the City of Benicia, California." For many years appellant and at least three of his neighbors living in Block 51 had been occupying land other than that described in their deeds. In 1940, it was

discovered that the actual boundaries of the lots occupied by appellant and his neighbors were approximately 75 feet, or one-half a lot's width, to the west of the land described in their respective deeds. Thus, appellant had been living for over 40 years in a house on a lot that is actually the east half of Lot 8, but which his deed describes as the west half of Lot 7. His next-door neighbor, respondent, has a deed describing the east half of Lot 7, but he has been occupying a house on land described in appellant's deed, the west half of Lot 7. Nettie Connolly has been in possession for many years of property that includes the east half of Lot 7, which is unimproved land, and the west half of Lot 6. Her deed, however, describes the whole of Lot 6. The east half of Lot 6 and the west half of Lot 5 together constitute corner property occupied by Francis Little, but his deed describes the whole of Lot 5, a large part of which is a street.

At a tax sale in September, 1940, appellant purchased land described as the east half of Lot 8. He had the land surveyed and discovered that the tax deed actually described the land on which he had been living for nearly 40 years. A dispute subsequently arose between appellant and respondent with respect to the land occupied by respondent but described in appellant's deed, and respondent brought this action to quiet his title to the land in question on the ground that he had acquired title thereto by adverse possession. By a subsequent amendment to his complaint he also sought reformation of his deed. Appellant filed an answer and cross-complaint and secured an order to bring in new parties, including E. E. Rose and Bessie C. Rose, who claim an interest in the land in question under a deed of trust. Meanwhile, respondent also brought an action against Nettie Connolly claiming title under his deed to the east half of Lot 7. The actions were consolidated for trial. Judgment was entered for respondent quieting his title to the land occupied by him, namely, the west half of Lot 7, subject to the deed of trust in favor of E. E. Rose and Bessie C. Rose; the judgment also determined that Nettie Connolly owns the land occupied by her, namely, the east half of Lot 7. No appeal has been taken from the part of the judgment quieting title in favor of Nettie Connolly.

In 1890 L. B. Misner executed a deed to Lot 7 to E. F. Albee and F. M. Carson. Shortly thereafter the grantees exchanged deeds, dividing the lot between them. Carson received a deed describing the east half of Lot 7, and Albee received a deed describing the west half. In 1901, Albee executed a deed to

Manuel Costa likewise describing the west half of Lot 7, but Costa took possession of the east half of Lot 8 and has resided thereon ever since.

In 1893, E. M. Carson executed a deed to Nicholas Nelson describing the east half of Lot 7. Similar deeds were executed by Nelson and his successors in interest, including a deed executed in 1928 by H. C. and Myrtle Glass to George Costa, the son of appellant, who occupied the land until 1936, when he transferred possession to E. E. Rose and Bessie Rose and executed a deed in their favor likewise describing the adjoining land. In 1938, E. E. Rose and Bessie Rose executed a like deed in favor of Nicholas Kadas and Josephine Kadas. The land was in possession of tenants of Nicholas and Josephine Kadas in March, 1940, when they executed a deed in favor of respondent, Ernest T. Sorenson, likewise describing adjoining land. The tenants remained in possession, paying their rent to respondent until the termination of their tenancy, about six months later, when respondent went into possession.

The trial court found that "for more than forty years last past, and prior to the commencement of this action, plaintiff Ernest T. Sorenson and his predecessors of title, have been in actual possession'' of the property in question; that "from the year 1893, to the date of the commencement of this action, due to the mistake of the several Grantees and Grantors of said real property, the same has been mistakenly described in the several conveyances thereof, including the conveyance to plaintiff herein, as the East one-half (E ½) of Lot Seven (7), Block Fifty-one (51), City of Benicia, California, instead of the West one-half (W ½) of Lot Seven, Block Fifty-one (51), City of Benicia, California.''

With respect to the payment of taxes, the trial court found that for many years "and particularly during the five year period prior to the commencement of this action, the real property hereinabove described . . . has been described on the tax assessment rolls of both the County of Solano, and the City of Benecia, California, as the East one-half (E ½) of Lot Seven (7) Block Fifty-one (51), City of Benicia, California and that all taxes assessed by the County of Solano and City of Benicia, California, against said property have been assessed against plaintiff, Ernest T. Sorenson and his predecessors in possession and occupation of said real property . . .'' The court also found that both appellant and respondent and their predecessors "have paid all of the

taxes assessed by the City of Benicia and the County of Solano, against the properties actually occupied by them.''

In addition, the trial court found that respondent ''and his predecessors in interest have since the 19th day of April, 1890, been in actual possession'' of the property in question ''and have ever since the last date . . . occupied, used and cultivated said land, having and keeping the same surrounded by a substantial enclosure, using and claiming the same in their own right from that date to the present time adversely, to all the world.''

A person claiming title to property by adverse possession must establish his claim under either section 322 or under sections 324 and 325 of the Code of Civil Procedure. Adverse possession under section 322 is based on what is commonly referred to as color of title. In order to establish a title under this section it is necessary to show that the claimant or ''those under whom he claims, entered into possession of the property under claim of title, exclusive of other right, founding such claim upon a written instrument, as being a conveyance of the property in question, or upon the decree or judgment of a competent court, and that there has been a continued occupation and possession of the property included in such instrument, decree, or judgment, or of some part of the property . . . for five years . . . so included. . . .'' Since the deeds in question did not include the land occupied, adverse possession thereof is governed by sections 324 and 325 of the Code of Civil Procedure. (*Park* v. *Powers,* 2 Cal.2d 590, 594 [42 P.2d 75].)

Section 324 of the Code of Civil Procedure provides that '' [w]here it appears that there has been an actual continued occupation of land, under a claim of title, exclusive of any other right, but not founded upon a written instrument, judgment or decree, the land so actually occupied, and no other, is deemed to have been held adversely.'' Section 325 provides that ''For the purpose of constituting an adverse possession by a person claiming title, not founded upon a written instrument, judgment, or decree, land is deemed to have been possessed and occupied in the following cases only :

(1) Where it has been protected by a substantial inclosure.

(2) Where it has been usually cultivated or improved.

''Provided, however, that in no case shall adverse possession be considered established under the provisions of any section or sections of this code, unless it shall be shown that the land

has been occupied and claimed for the period of five years continuously, and the party or persons, their predecessors and grantors, have paid all the taxes, state, county, or municipal, which have been levied and assessed upon such land.''

The trial court found that the land was occupied continuously by respondent and his predecessors for more than five years; that throughout that period it was protected by a substantial enclosure and usually cultivated; and that all the taxes assessed thereon had been paid by respondent and his predecessors. Appellant contends, however, that respondent is precluded, as a matter of law, from establishing title by adverse possession. Appellant's contentions in this regard may be classified under the following headings: (1) That the mutual mistake of the parties precluded respondent from establishing the adverse character of the possession of the property by him and his predecessors; (2) that the fact that the deeds held by respondent and his predecessors failed to describe the land in question precluded him from showing continuity of possession for the statutory period; (3) that respondent did not prove that he and his predecessors paid all the taxes assessed on the land in question during the statutory period.

### THE ADVERSE CHARACTER OF THE POSSESSION

Appellant contends that as a matter of law respondent could not have acquired title by adverse possession because the mutual mistake of the parties for the statutory period precluded respondent from showing that the possession was hostile or adverse to the rights of the record owner. A similar contention was rejected by this court in *Woodward* v. *Faris,* 109 Cal. 12, 17 [41 P. 781]. ▉ The requirement of ''hostility'' relied on by appellant (see *West* v. *Evans,* 29 Cal.2d 414, 417 [175 P.2d 219]) means, not that the parties must have a dispute as to the title during the period of possession, but that the claimant's possession must be adverse to the record owner, ''unaccompanied by any recognition, express or inferable from the circumstances of the right in the latter.'' (4 Tiffany, Real Property [3d ed.], 425.) Appellant's contention that respondent's possession was not adverse is based on the statement in *Holzer* v. *Read,* 216 Cal. 119, 123 [13 P.2d 697], that ''where the occupation of land is by a mere mistake, and with *no intention on the part of the occupant to claim as his own,* land which does not belong to him, but with the intention to claim only to the true line wherever it may be,

the holding is not adverse." [Italics added.] That statement is not applicable to the present case, for the trial court found on the basis of substantial evidence that respondent and his predecessors did claim the land as their own and held it "adversely to all the world." The Holzer case involved a different situation, a dispute as to boundaries, that turned on the question whether the occupier in occupying up to a certain line intended to claim the land included in the record title of his neighbor or to claim only whatever land was described in his own deed. (See Code Civ. Proc., §§ 322, 324.) The trial court found that he intended to claim only the land described in his deed, and this court affirmed the judgment on the ground that in the absence of an intention to claim the land in dispute as his own, his possession was not adverse. On the other hand, in *Woodward* v. *Faris, supra,* 109 Cal. 12, 17, this court expressly held that if the claimant intends to claim the area occupied as his land, the mere fact that the claim was based on mistake does not preclude him from acquiring title by adverse possession. ■ Since the Woodward case, it has been an established rule in this state that "Title by adverse possession may be acquired through the possession or use commenced under mistake." (*Park* v. *Powers, supra,* 2 Cal.2d 590, 596; *Lucas* v. *Provines,* 130 Cal. 270, 272 [62 P. 509]; see 1 Cal.Jur. 578; cases from other jurisdictions collected, 97 A.L.R. 14, 58; 4 Tiffany, Real Property [*supra*], § 1159; 1 Walsh, Commentaries on the Law of Real Property, § 19.)

■ Nor is there any merit to appellant's contention that if adverse possession may be based on a mistaken entry, the period of the statute of limitations runs only from the discovery of the mistake. Appellant relies on *Breen* v. *Donnelly,* 74 Cal. 301, 305 [15 P. 845] and a dictum in *Marsicano* v. *Luning,* 19 Cal.App. 334, 336 [125 P. 1083]. The case of *Breen* v. *Donnelly, supra,* is not in point, for it involved the application of the statute of limitations to an action for relief on the ground of fraud or mistake under section 338(4) of the Code of Civil Procedure. Section 338(4) provides that in such a case the cause of action for purposes of the statute of limitations is deemed not to accrue until the discovery of facts constituting the fraud or mistake. The section is an express exception to the general rule that the statute of limitations begins to run when the cause of action actually accrues. (Code Civ. Proc., § 312.) A cause of action for the recovery of real property accrues when the owner is deprived of possession. (Code Civ. Proc., §§ 318, 321.) "Occupancy for the

period prescribed by the Code of Civil Procedure as sufficient to bar any action for the recovery of the property confers a title thereto . . . sufficient against all. . . .'' (Civ. Code, § 1007.) The dictum in *Marsicano* v. *Luning,* 19 Cal. App. 334, 336 [125 P. 1083], that the period of adverse possession does not commence to run until the discovery of the mistake, must be disapproved, for it is not only inconsistent with the statutes of this state but is directly contrary to the holding of this court in *Woodward* v. *Faris, supra,* 109 Cal. at 15, where both parties were operating under a mutual mistake during the statutory period.

Appellant also contends that the mutual mistake precludes respondent from showing that his possession and that of his predecessors was under ''such circumstances as to constitute reasonable notice to the owner.'' (*West* v. *Evans, supra,* 29 Cal.2d 414, 417.) Appellant has evidently misconstrued the foregoing language to mean that a person claiming title by adverse possession must establish that the record owner knew of his own rights in the land in question. All that the claimant must show, however, is that his occupation was such as to constitute reasonable notice to the true owner that he claimed the land as his own. The fact that the record owner was unaware of his own rights in the land is immaterial. (*Wood* v. *Davidson,* 62 Cal.App.2d 885, 889 [145 P.2d 659] ; *McLeod* v. *Reyes,* 4 Cal.App.2d 143, 157 [40 P.2d 839] ; *Montecito Valley Co.* v. *Santa Barbara,* 144 Cal. 578 [77 P. 1113 ; additional cases collected, 1 Cal.Jur. 550; 4 Tiffany, Real Property, *supra,* § 1140.) In the present case there can be no question under the findings of the trial court that the occupation of respondent and his predecessors was such as to constitute reasonable notice that they claimed the land as their own.

### CONTINUITY OF POSSESSION

Under section 325 of the Code of Civil Procedure, respondent was required to prove that ''the land had been occupied and claimed for the period of five years continuously.'' Since respondent did not himself possess or occupy the land for five years, it was necessary for him to rely on the possessions of his predecessors to establish continuous possession for the five-year period. In order to tack one person's possession to that of another, some form of privity between successive claimants for the five-year period is necessary. (*San Francisco*

v. *Fulde*, 37 Cal. 349, 353 [99 Am.Dec. 278]; *Meier* v. *Meier*, 71 Cal.App.2d 502, 507 [162 P.2d 950].) Appellant contends that respondent failed to establish the necessary privity.

The trial court found that respondent "and his predecessors in title, have been in possession and occupied the west one-half (W ½) of Lot Seven . . . by virtue and under deed describing their said property as the East one-half (E ½) of Lot Seven. . . ." from the year 1893 to the date of the commencement of the action.

The trial court found that respondent and "his predecessors in title" have been in possession of the property in question by virtue of deeds mistakenly describing the property as the east one-half of Lot 7 for more than the statutory period and that the land in question was conveyed to plaintiff and his predecessors by deeds describing the adjoining property. Since respondent's claim of title by adverse possession cannot be based on a written instrument, it must be supported, if at all, under Code of Civil Procedure sections 324 and 325, which do not require a written instrument. The question remains what privity other than that based on a deed describing the land will supply the necessary continuity of possession between respondent and his predecessors for the five-year period preceding the commencement of this action.

Relying on *Messer* v. *Hibernia Savings Society*, 149 Cal. 122, 128 [84 P. 835], and *Von Neindorff* v. *Schallock*, 21 Cal.App.2d 44, 48 [68 P.2d 278], appellant contends that only a deed describing the land claimed will supply the necessary privity. Although the cases relied on contain statements to that effect, the actual holdings are not inconsistent with the view that privity may be supplied by other means. In both cases the claimant attempted to support his claim of adverse possession by a deed excluding the land claimed, and it was held that such deeds did not supply the necessary privity. In the Von Neindorff case, *supra*, 21 Cal.App.2d 44, 48, the court stated that a person claiming title to land by adverse possession "cannot tack to the time of his possession that of a previous holder where the land claimed adversely was not included within the boundaries of the conveyance he received from such previous holder." The court stated as the reason for this rule that "otherwise a person receiving a conveyance of a part of lands occupied by a predecessor might use the possession of that predecessor of another part of the land to defeat the rights of that predecessor with respect to that part of the land

which he intended to keep for himself. The rule is particularly appropriate in a case such as this where the land, the predecessor's possession of which is relied upon, was particularly excepted from the conveyance made by the predecessor.'' This statement of the reason for the rule and its application to the facts of the Von Neindorff and Messer cases shows that the rule was too broadly stated in those cases. The reasoning supports, at most, a rule designed to protect the claimant's predecessor where he transfers by deed a part but not all of the land he possessed. It has no application to a situation where the deed describes none of the land possessed by the claimant's predecessor and the predecessor has transferred possession and attempted to transfer title to all of the land that he possessed. In such a situation the deed to land possessed by neither the present claimant nor his predecessors does not preclude a claim by the person in possession to the land occupied.

Appellant relies also on *Allen* v. *McKay & Co.*, 120 Cal. 332 [52 P. 828], and *Saner* v. *Knight*, 86 Cal.App. 347 [260 P. 942]. The court's only comment relevant to the problem of privity in the Allen case, however, is that ''it may be further suggested that a privity of estate is absolutely necessary before various periods of adverse possession created by different parties may be tacked together, and, as to the land in controversy, the existence of such privity . . . is not entirely plain.'' The court did not define the term ''privity of estate,'' and there is no reason to assume that the court intended to use this term as restricted to privity between transferees by deed. (See Ballantine, *Title by Adverse Possession*, 32 Harv.L.Rev. 135, 147.) In *Saner* v. *Knight*, 86 Cal.App. 347, 351 [260 P. 942], it was held that deeds describing the property were sufficient to establish the privity necessary to tack the adverse possession of the claimant to that of his predecessors. Although the court assumed that privity might not be established by other means, any language in the opinion supporting such a rule was unnecessary to the decision in that case and is disapproved.

█ The requirement of privity between several possessors of land is based on the theory that ''The several occupancies must be so connected that each occupant can go back to the original entry or holding as a source of title. The successive occupants must claim through and under their predecessors

and not independently to make a continuous holding united into one ground of action." (Ballantine, *supra,* 32 Harv.L. Rev. 135, 147.) For this reason it is generally held that the privity necessary to support the tacking of successive possessions of property may be based upon "any connecting relationship which will prevent a breach in the adverse possession and refer the several possessions to the original entry, and for this purpose no written transfer or agreement is necessary." (4 Tiffany, Real Property, *supra,* 434; *Illinois Steel Co.* v. *Paczocha,* 139 Wis. 23, 28 [119 N.W. 550] ; *Gregory* v. *Thorrez,* 277 Mich. 197, 200 [269 N.W. 142] ; *Bonds* v. *Smith,* 143 F.2d 369, 371; cases collected 46 A.L.R. 792, 795; Ballantine, *supra,* 32 Harv.L.Rev. 135, 147-159; 5 Thompson on Real Property [Perm. ed.], 468; 1 Walsh, Commentaries on the Law of Real Property, *supra,* § 23.) "It is possession not title which is vital . . . privity may exist where one by agreement surrenders his, possession to another in such manner that no interruption or interval occurs between the two possessions without a recorded conveyance, or even without writing of any kind if actual possession is transferred." (*Bonds* v. *Smith, supra,* 143 F.2d 369, 371.)

In the present case, although the finding that the land in question was conveyed by deeds mistakenly describing the property does not alone support the conclusion that the privity necessary to tack successive possessions existed between respondent and his predecessors, it does support the conclusion that respondent's predecessors intended to transfer the land in question. There is no question that the evidence before the trial court showed that possession to the land in question was actually transferred to each successive occupant during the five-year period. It therefore follows that the conclusion of the trial court that the respondent and his predecessors were in continuous possession for the statutory period must be sustained.

PAYMENT OF TAXES

The trial court found that the land occupied by respondent, the west half of Lot 7, is improved land, whereas the east half of Lot 7 described in respondent's deed is unimproved, and that through a general mistake, the improved lot occupied by respondent "has been generally known and described in and about the City of Benecia" as the east half of Lot 7, an unimproved part of the property occupied by Nettie Connolly. The court found that this same mistake was made on the

assessment rolls and that the property occupied by respondent has been described in the tax assessment rolls of both the city and county as the east half of Lot 7 and assessed to respondent and his predecessors as improved property. The court therefore determined that respondent and his predecessors have paid all the taxes that have been assessed on the property actually occupied by them for the five-year period before the commencement of the action.

Thus, all interested persons have mistakenly believed during the statutory period that the description of the land and improvements on the tax assessment rolls referred to the land occupied by respondent, when, in fact, the description erroneously referred to certain unimproved property. The evidence before the trial court, particularly the fact that the land was assessed as improved property whereas the description on its face referred to a vacant lot, supports the trial court's determination that the description was mistaken and that the respondent and his predecessors actually paid all taxes assessed for the statutory period on the land that they occupied.

Appellant contends that the description on the tax assessment rolls is controlling, and that as a matter of law the respondent must have paid taxes only on the land described on the assessment rolls. This court has held, however, that the fact that land was not assessed by its description is not controlling under section 325 of the Code of Civil Procedure. (*Ward Redwood Co.* v. *Fortain*, 16 Cal.2d 34, 44 [104 P.2d 813].) The purpose of the description on the tax assessment rolls is to notify interested parties of the taxes due on the property, and appellant cannot complain of any mistake in the description unless he was misled thereby. (*San Francisco* v. *San Mateo County*, 17 Cal.2d 814, 819 [112 P.2d 595]; *E. E. McCalla Co.* v. *Sleeper*, 105 Cal.App. 562, 567 [288 P. 146]; *Biaggi* v. *Phillips*, 50 Cal.App.2d 92, 98 [122 P.2d 619]; see also *Lummer* v. *Unruh*, 25 Cal.App. 97, 103-104 [142 P. 914].) Since appellant as well as other interested parties at the time the taxes in question were assessed also understood that the taxes related to the property occupied, he could not have been misled thereby. He was not injured by the mistake in the description, for at the time he did not know that he had any claim to the land in question and paid taxes on the property he was occupying assessed under a similar mistake in description. Appellant contends, however, that re-

spondent cannot rely on his own mistake and that of his predecessors as to the payment of taxes on the wrong land. There is no question that a person claiming title by adverse possession must show that he and his predecessors actually paid the taxes assessed on the particular land occupied, and he cannot show compliance with section 325 of the Code of Civil Procedure by merely proving that he and his predecessors "thought or supposed they were paying taxes" on the land occupied by them, when the lands were assessed under a correct description that applied to other land. (*Standard Quicksilver Co.* v. *Habishaw*, 132 Cal. 115, 124 [64 P. 113] ; *Reynolds* v. *Willard*, 80 Cal. 605, 608 [22 P. 262].) In the present case, however, the respondent proved by substantial evidence that the description on the tax assessment rolls was mistaken and that he and his predecessors not only thought that they were paying taxes on the land occupied but in fact paid taxes actually assessed against such lands.

Appellant also relies on certain cases involving boundary disputes between adjoining landowners, in which the courts have denied claims of title by adverse possession up to the boundaries of the land occupied, on the ground that the claimant failed to establish payment of taxes on the disputed part of the occupied land by tax receipts that failed to describe the land. (See *Freidman* v. *Southern Calif. T. Co.*, 179 Cal. 266 [176 P. 442] ; *Mann* v. *Mann*, 152 Cal. 23, 29 [91 P. 994] ; *Wilder* v. *Nicolaus*, 50 Cal.App. 776 [195 P. 1068] ; *Johnson* v. *Buck*, 7 Cal.App.2d 197, 202 [46 P.2d 771].) In none of these cases, however, does it appear that the claimant showed that the descriptions on the tax receipts were erroneous and that he actually paid the taxes assessed on the land in controversy. Where a claimant of title by adverse possession has paid the taxes actually assessed on the property occupied, a misdescription on the tax assessment roll or in the tax receipts will not generally affect the efficacy of payment under statutes requiring the payment of taxes in order to establish title by adverse possession. (*West Chicago Park Commissioners* v. *Coleman*, 108 Ill. 591, 598; *W. D. Cleveland & Sons* v. *Smith* (Tex.Civ.App.), 156 S.W. 247, 251; cases collected 2 C.J.S. 752; 132 A.L.R. 216, 227.) Even if the descriptions on the tax receipts are insufficient by themselves to identify the property, as far as the requirements of adverse possession are involved, the claimant may show by other evidence that the particular land occupied was assessed, and the

taxes were paid by him or his predecessors. (See *Branch* v. *Lee*, 373 Ill. 333 [26 N.E.2d 88] ; see also *Lummer* v. *Unruh, supra,* 25 Cal.App. 97, 104.)

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.

Appellant's petition for a rehearing was denied September 20, 1948.