[Civ. No. 8369.   Third Dist.   Apr. 15, 1954.]

EDWARD H. SIBBETT et al., Appellants, v. EUGENE
E. BABCOCK et al., Respondents.

Edward H. Sibbett, in pro. per., and Spur & Brunner for
Appellants.

Kasch & Cook, Leo M. Cook and McCowen & McCowen for
Respondents.

PAULSEN, J. pro tem.*—Appellants brought this action
to quiet their title to one-half the water flowing in a small
tributary of the Russian River from the 1st of May to the
31st of October each year; to enjoin the diversion thereof
by respondents, and for declaratory relief.   The trial was
limited to a determination of the issues raised by the re-
spondents' plea that the causes of action were barred by the
statute of limitations.   (Code Civ. Proc., § 318.)   The trial

*Assigned by Chairman of Judicial Council.

court found that they were so barred and decreed that appellants take nothing by their action. This appeal is from the judgment rendered.

Each of the parties owns property which is riparian to the stream, the Babcock property being located above that of appellants and the Johnson property being located still farther upstream.

It is not disputed that respondents could and did put the water taken by them to a beneficial use for the months in question, but there is a conflict in the evidence as to whether or not respondents had done so during the summer months for a continuous five-year period between the years 1941 and 1949. Appellants contend that respondents failed to show that appellants or their predecessors in interest "had a cause of action at any time prior to the filing of this complaint" and argue that if they "became seized or possessed of any part of the water up to at least one-half the flow . . . for any one year then the 5-year period is broken."

The problem presented here is simplified by appellants' own statement:

"The crux of this whole matter seems to hinge on whether the defendants have fulfilled the burden of proof and shown that Sibbetts' rights to a reasonable amount of water have been infringed for a period of 5 years beginning in May of 1941. Certainly the defendants were vague as to the amount of water flowing through their properties, how much they used, and how much was allowed to flow across and off their premises. Their testimony as to use and amounts of flow in certain years was worthless and they failed to tie in any year or years in particular that they used water and how much."

The trial court found that respondents Babcock had secured a permit to take water from the stream in the year 1940 and had immediately commenced to construct a dam across the stream and beginning with the year 1941 "said defendants have continuously taken this water in the summer months, claiming to own it as against all persons." It found further that "To all intents and purposes they have during the years taken all of the water of the stream in the summer months, there being only occasional times when water went past their dam and down the stream in any significant quantity." The evidence shows without dispute that in 1940 the Babcocks applied for a permit to take water out of the stream and after it was granted that year they constructed a dam about five feet high. About the 1st of May, 1941 they

attempted to stop the total flow of water at the dam. The dam was of a new type in that locality, consisting of concrete piers with metal slots in which boards were inserted when it was desired to stop the flow of water in the stream. Its construction aroused a great deal of public interest, it was discussed in the local papers and many people came to view it. The whole operation was open and notorious. Mrs. Babcock testified that in May at the beginning of each irrigation season they would put the boards in the dam; that this would stop the entire flow of water with the exception of a small amount that seeped through the dam, and that this was done each year beginning in 1941 and continued to the time of the filing of the complaint in this action. Mr. Babcock testified that he pumped water from the dam for about four hours each morning, and that it was then allowed to fill until the next morning. He further testified that occasionally, if there was a little more water than usual flowing in the stream, or if he was late at starting his pump, some water would flow over the dam.

Edson Withrow, who lived downstream from the Babcock property, but not close enough to see the dam, testified that the boards were put in each May and kept there until late in the fall, but that there was always some water flowing down to his property and that he used it to irrigate his garden. He estimated that there was enough water to "half fill a 12 inch pipe." He did not state, however, that this came from the dam. In explaining the situation below the dam, Mrs. Babcock testified that some of the water there came from springs in the bank and some of it from water returned after irrigation.

It is at once apparent that the only question to be determined is whether or not the evidence supports the court's finding that during the months in question and for a continuous five-year period the entire flow of water, with the exception of negligible amounts, was prevented from passing the dam to be used by appellants. Appellants point to a number of conflicts in the evidence and it may be conceded that these portions, if found to be true, would support their contentions. The question, however, is whether there is other evidence that would support the findings if considered in the light most favorable to respondents and if they are given the benefit of all inferences that might reasonably be drawn from it.

■ The respondents were only called upon to establish the bar of the statute of limitations without the necessity of proving prescription or adverse possession. (*Akley* v. *Bassett,* 189 Cal. 625 [209 P.2d 576]; *Cocking* v. *Fulwider,* 95 Cal. App. 745 [273 P. 142].) The proof was sufficient, however, to establish all the elements of prescription.

"The law is so well-established in this state as to require no extended citation of authorities that an upper riparian owner may acquire a prescriptive right to the waters of a stream as against a lower riparian owner by an adverse use of said waters for the prescriptive period." (*Moore* v. *California Oregon Power Co.,* 22 Cal.2d 725, 735 [140 P.2d 798].)

The case of *Morgan* v. *Walker,* 217 Cal. 607 [20 P.2d 660], presented facts strikingly similar to those at bar. The court there found that the plaintiffs by means of a dam had, during the irrigating seasons for over five years, taken practically all of the water flowing down a certain creek, merely permitting such water as leaked through the dirt and rock dam to go down the creek to the lands of defendants. There was conflicting evidence as to whether or not practically all of the water was diverted, but the contradiction was weighed by the trial court in favor of the plaintiffs and the court had no hesitation in finding that plaintiffs had thus acquired a prescriptive right to the water so used during the irrigating season. The Supreme Court said at page 615 that such proof of continuous occupancy and use of water by plaintiffs as though they were the owners established a prima facie case and that it then devolved upon the defendant to show that the use of the water was permissive only or without his knowledge. The court further stated:

" 'In appropriating the water which flows across his land, the lower appropriator invades no right of the upper riparian proprietor. The latter has no right of action to prevent such use, for he is in nowise injured, and the former should not be permitted to acquire a right in this manner which the latter is powerless to prevent. The case is quite different where the upper owner appropriates the water. The lower owner is injured at once and the law gives him a remedy, and, if he fails to avail himself of it, the appropriation may, by lapse of time, ripen into an absolute right.' (*Bathgate* v. *Irvine,* 126 Cal. 135, 141 [58 P. 442, 444, 77 Am.St.Rep. 158]; *Pyramid Land etc. Co.* v. *Scott,* 51 Cal.App. 634, 638 [197 P. 398].) An upper riparian owner may gain a right by prescription as against the rights of the lower riparian

owner by proof that the latter had actual notice of the adverse claim of the upper owner, or that the circumstances were such, as for instance the use of all the water of the creek, that the lower owner must be presumed to have known of the adverse claim.''

The court further stated with respect to how much water must be used to create a presumption of knowledge of adverse claim: ''The amount of the stream which was not so diverted was negligible and consisted only of the seepage through the Childs dam.''

In the present case the record shows clearly that appellants and their predecessors had notice of the construction and use of the dam in such a way as to stop all but a negligible amount of water each year from the 1st of May to the last of October. And that the seepage was, in fact, negligible is shown by the photographic evidence of the dam, and the testimony of Mrs. Babcock.

Complaint is made that the judgment is too broad as to time, but we think there is no merit in this contention. Appellants sought to quiet title to the use of water flowing from May 1st to October 31st each year and to enjoin its diversion during that period. The judgment simply states that they shall take nothing by said action.

The judgment is affirmed.

Schottky, J., and Peek, J., concurred.