[Civ. No. 792. Fifth Dist. Dec. 18, 1967.]

CAROLYN H. SCHOENFELD et al., Plaintiffs and Respondents, v. DONALD M. PRITZKER et al., Defendants and Appellants.

Mack, Bianco & Means and H. C. Mack, Jr., for Defendants and Appellants.

Siemon & Patterson and Bennett Siemon for Plaintiffs and Respondents.

CONLEY, P. J.—The plaintiffs, Carolyn Schoenfeld, Rosalie J. Levy and Clarisse Haberfelde Main, are the owners of the northwest quarter of section 17, township 30 south, range 30 east, M. D. B. & M., while the defendants, Donald M. Pritzker and Janet Wyman own adjoining land, namely, the northwest quarter of the northeast quarter of the same section, township and range. The plaintiffs were successful in their suit to quiet their title as against the defendants and the

latter appeal. The strip of land in question contains roughly six acres and is now planted to orange trees. The essential elements here involved consist of the fact that for many years without specifically claiming the intervening strip of land adversely to the plaintiffs the defendants and their predecessors used the parcel to raise annual crops without objection by the plaintiffs. However, the defendants never paid taxes on the land and there was never an agreement express or implied between the owners that there should be erected a division fence, or that a pipeline or farm road installed unilaterally by the plaintiffs' predecessors on their own land should constitute a borderline as between the two parcels.

We are bound, of course, by the findings of fact made by the trial judge which actually had ample substantial evidence in their support, and which include the following: (1) "At some time during the year 1939, plaintiffs caused a pipeline to be constructed from the North line of said section running in a southerly direction" which pipeline "was located approximately 200 feet westerly of the North-South center line of said section"; (2) "After the construction of such pipeline defendants occupied the land lying 30 feet easterly of such pipeline by planting and harvesting yearly crops thereon"; (3) "Defendants did not attempt to construct any permanent improvements upon such strip of land until the summer of 1963, at which time they prepared the land for the planting of orange trees"; (4) "Plaintiffs, on June 11, 1963, immediately upon being advised of such acts, gave defendants notice in writing that they were encroaching upon plaintiffs' land and demanded that defendants desist from such action"; (5) "Defendants did not pay any taxes levied or assessed upon the land, or any portion thereof, lying easterly of the pipeline and westerly of the North-South center line of said section"; (6) "Defendants occupied said strip under the mistaken belief that the pipeline was located on the boundary and defendants did not intend to claim title to any property they did not own"; (7) "Neither plaintiffs nor defendants were uncertain as to the location of said boundary line . . ."; (8) ". . . plaintiffs and defendants did not enter into an agreement fixing the boundary line at the pipeline or at any other point"; (9) "The use of the land belonging to plaintiffs by defendants was under a mistake on the part of the defendants that the pipeline had been constructed by plaintiffs on the boundary between the two parcels"; (10) "Plaintiffs did not at any time make any false statements and did not conceal

any material fact from defendants as to the location of the boundary line . . .''; (11) ''. . . plaintiffs notified defendants of the encroachment upon learning of defendants' actions in commencing to place permanent improvements consisting of orange trees upon plaintiffs' property; that such notification was given promptly and before defendants had suffered substantial damage . . .''; (12) ''. . . that the true boundary was ascertainable and that defendants' act in planting such trees upon said strip of land was done and performed with knowledge of plaintiffs' claims''; (13) ''Defendants' occupation of said strip of land was under and subordinate to plaintiffs' legal title.''

As conclusions of law the court held that the plaintiffs were owners of their quarter section of land and that the boundary line between the parcels of land owned by the plaintiffs and defendants is the north-south center line of said section, being a straight line between the north quarter corner and the south quarter corner; that defendants' occupancy of the easterly 200 feet of the northwest quarter of section 17 was without title or right; that plaintiffs' action is not barred by the provisions of section 318 of the Code of Civil Procedure or any other statute of limitations, and that plaintiffs are not estopped or barred by laches from asserting title to the whole of their quarter section of land; that no boundary other than the true boundary was established between the plaintiffs and defendants under the doctrine of agreed boundaries or otherwise, and that the defendants have not acquired title to any portion of the northwest quarter of section 17, township 30 south, range 30 east, M.D.B. & M. by adverse possession or otherwise. Consequently, the title of plaintiffs to the whole of their quarter section of land was quieted by the decree.

█ The principal defense urged by the defendants is that respondents are barred by the provisions of section 318 of the Code of Civil Procedure which hold that: ''No action for the recovery of real property, or for the recovery of the possession thereof, can be maintained, unless it appear that the plaintiff, his ancestor, predecessor, or grantor, was seized or possessed of the property in question, within five years before the commencement of the action.''

Defendants cite *Townsend* v. *Driver*, 5 Cal.App. 581 [90 P. 1071], and *Haney* v. *Kinevan*, 73 Cal.App.2d 343 [166 P.2d 361], to the alleged effect that plaintiffs' action is an action to quiet title, and, consequently, that it is for the recovery of real property within the meaning of section 318 of the Code

of Civil Procedure, and that under the holdings of *Cocking* v. *Fulwider,* 95 Cal.App. 745 [273 P. 142], *Sibbett* v. *Babcock,* 124 Cal.App.2d 567 [269 P.2d 42], and *Ernie* v. *Trinity Lutheran Church,* 51 Cal.2d 702 [336 P.2d 525], because defendants were in open possession of the disputed strip from 1939 and that because defendants refused to assent to what Mr. Haberfelde called the "true surveyed line," they were in hostile possession of the strip of land for more than five years and the statute of limitations should apply to bar the plaintiffs' action.

The *Haney* case, *supra,* placed the burden of proof on plaintiff in a quiet title action, and the *Cocking* case, *supra,* denied a legal owner a decree quieting title when the defendant proved actual possession for 30 years, even though defendant was unable to establish title by adverse possession because of his failure to pay taxes. The *Cocking* case sounds impressive; however, it was criticized in 17 California Law Review 390, 393-394, where it is stated: "In the recent case of *Cocking* v. *Fulwider,* however, the California District Court of Appeal considered, among other grounds for refusing to quiet title in the plaintiff, the effect of Section 318 of the Code of Civil Procedure, and held that, since the language of the section required '*seisin or possession*' by the plaintiff within five years before the commencement of the action, the plaintiff could not recover, although he was, and he and his predecessors for thirty years had been, in actual possession of all the property except the disputed boundary strip, and although he had legal title to the entire tract. It was admitted that the defendant had acquired no title to the disputed strip, because neither he nor his predecessors had ever paid taxes on it as required by Section 325 of the Code of Civil Procedure. *The decision appears to rest upon a very narrow interpretation of the expression 'seised or possessed' as used in the Code.* It seems that the court here requires actual possession or occupation of the property by the plaintiff within five years preceding the bringing of the action in order that he be allowed to bring it at all. When, however, this case is considered in the light of other decided cases, both in California and in other states having similar statutes, the question arises whether the expression 'seised or possessed' as used in the Code does not include the theoretical possession of a legal owner whose property is not in the adverse possession of another. Although the legal owner may not be in the actual occupation of his land, *is he not still to be regarded as 'seised or possessed' so*

*long as no one else is actually holding adversely to him?"*
(Italics added.)

Witkin states that the correct rule is that "seisin" or the right of possession is in the legal owner, even while an adverse claimant is actually occupying the land, and a showing of legal title is enough to satisfy section 318 of the Code of Civil Procedure. That work cites *People's Water Co. v. Boromeo,* 31 Cal.App. 270 [160 P. 574]; *Westphal v. Arnoux,* 51 Cal. App. 532 [197 P. 395]; *Philp v. Hobart,* 103 Cal.App.2d 446, 448 [229 P.2d 783]; and *Clark v. Stotts,* 127 Cal.App.2d 589 [274 P.2d 172], in support of the rule as announced. (2 Witkin, Summary of Cal. Law (1960) Real Property, § 24, p. 880.)

In *Balestrieri v. Sullivan,* 142 Cal.App.2d 332, 340-341 [298 P.2d 688], it is said: "It is urged that in any event, because of appellants' long continued possession of the strip, respondents cannot quiet title, for they must show that they were seized or possessed of the property within five years preceding the action. (Code Civ. Proc., § 318.) Recovery was denied in *Cocking v. Fulwider,* 95 Cal.App. 745 [273 P. 142], where defendant proved actual possession for 30 years, although defendant was unable to get title by adverse possession because of failure to pay taxes. In that case there was evidence that in the year 1888 the adjoining owners had agreed upon the common boundary, that this boundary had been acquiesced in for more than 30 years by the parties and their predecessors in title. In 1917 a new survey was made under which appellant claimed title to a strip of land beyond the old boundary.

"In *People's Water Co. v. Boromeo,* 31 Cal.App. 270 [160 P. 574], an ejectment action, it was held that findings that defendants were in open, notorious possession of the land for a period of five years preceding the bringing of the action, and that plaintiffs were seized of said land within the last five years as required by section 318, Code of Civil Procedure, where the defendants had not paid the taxes for the requisite years, were not inconsistent. *It was said that seisin of plaintiff in the premises was the right of possession which could only be destroyed by defendants' compliance with the requirements for establishing title by adverse possession,* and that section 318 is to be read in connection with sections 322, 323 and 325 of the same code which set forth the legal prerequisites for such title by adverse possession as would defeat plaintiff's seisin in law. In *Westphal v. Arnoux,* 51 Cal.App.

532, 534 [197 P. 395] an ejectment action, it was said that the requirement of section 318, Code of Civil Procedure, was satisfied when it was shown that plaintiff had legal title, and that the burden was then placed on defendant to show that he had held the property adversely for five years. In the recent case of *Madden* v. *Alpha Hardware & Supply Co.,* 128 Cal.App.2d 72, 75 [274 P.2d 705], it is said that plaintiffs having shown legal title in themselves 'it is presumed that they were possessed of the property within the time required by law and that the occupation thereof by defendant is deemed to have been in subordination of plaintiff's title, unless it be shown that defendant's possession was adverse for the statutory period.' (And see *Wilkerson* v. *Thomas,* 121 Cal.App.2d 479, 486 [263 P.2d 678].)'' (Italics added.)

Plaintiffs correctly argue that the authorities hold that section 318 must be read in connection with those sections which set forth legal prerequisites for obtaining title by adverse possession, otherwise, the record owner would be unable to recover possession, and a possessor would be unable to establish title and the rule that the right of possession is an incident of title would be destroyed. In *Labory* v. *Los Angeles Orphan Asylum,* 97 Cal. 270, 273 [32 P. 231], the court comments that " 'The rule is well settled that title draws to it the possession, and it remains with the owner of the legal title until he is divested of it by an actual adverse possession; . . .' '' The finding that appellants did not pay any taxes upon the strip, has not been attacked on the appeal; consequently, one of the essential elements of title by adverse possession is lacking, and the exception contained in Code of Civil Procedure, section 321, does not apply: "In every action for the recovery of real property, or the possession thereof, the person establishing a legal title to the property is presumed to have been possessed thereof within the time required by law, and the occupation of the property by any other person is deemed to have been under and in subordination to the legal title, *unless it appear that the property has been held and possessed adversely to such legal title, for five years before the commencement of the action.* (Enacted 1872.)'' (Italics added.)

(See also *Wood* v. *Henley,* 88 Cal.App. 441, 460 [263 P. 870]; *Nutting* v. *Herman Timber Co.,* 214 Cal.App.2d 650, 658 [29 Cal.Rptr. 754]; *Clark* v. *Stotts, supra,* 127 Cal.App. 2d 589, 591; *McKelvey* v. *Rodriquez,* 57 Cal.App.2d 214, 223 [134 P.2d 870]; *Ward Redwood Co., Inc.* v. *Fortain,* 16

Cal.2d 34, 42 [104 P.2d 813]; *People's Water Co.* v. *Lewis,* 19 Cal.App. 622, 625 [127 P. 506]; *Sharp* v. *Daugney,* 33 Cal. 505, 511; *Borden* v. *Boyvin,* 55 Cal.App.2d 432, 436 [130 P.2d 718]; *Comstock* v. *Finn,* 13 Cal.App.2d 151, 158 [56 P.2d 957].)

In its criticism of the *Cocking* case, *supra,* 17 California Law Review, pages 394-395 further states: "In Section 325 the acts and circumstances which constitute adverse possession are set forth; and it seems clear that unless these requirements are fully met by the one in actual occupation, he is not an adverse possessor within the meaning of the statute, and the legal owner should be considered as still 'seized or possessed' notwithstanding the actual occupation, not adverse, of the other. There is, at present, no single section in either the Civil Code or the Code of Civil Procedure which, by virtue of its separate provisions alone bars both the right and the remedy. In the Code of Civil Procedure, the remedy of the legal owner is barred by Section 318, which is the statute of limitation; Section 321, which should be read with Section 318, establishes the presumption of possession in the legal owner, unless such presumption is rebutted by the actual adverse possession, as defined in Section 325, of another; and in the Civil Code, Section 1007 confers title upon one who has occupied for the period which bars the legal owner of his remedy, subject, however, to the qualification that such occupation is not adverse unless it fulfills the statutory requirements."

These authorities support the trial court's holding that plaintiffs' action was not barred by the statute of limitations; appellants' possession was subordinate to respondents' title.

The defendants next maintain that the court erred in not finding that there was an "agreed boundary." However, a review of the record makes it clear that the necessary elements to authorize an agreed boundary were totally lacking. To prove an agreed boundary there must be an *uncertainty* and an *agreement* shown. (See 2 Witkin, Summary of Cal. Law (1960) Real Property, § 46, pp. 900-901, § 47, pp. 901-902.)

*Clapp* v. *Churchill,* 164 Cal. 741, 746 [130 P. 1061], holds: "In the case under consideration plaintiff's evidence completely breaks down in its failure to show an uncertainty touching the boundary line which would support such an agreement for, as is said in *Lewis* v. *Ogram* [149 Cal. 505 (87 P. 60, 117 Am.St.Rep. 151, 10 L.R.A. N.S. 610)]: 'such an

agreement necessarily is not valid for any other purpose than that of settling an uncertainty in regard to common boundary.' Plaintiff shows that he did not know where the true boundary line was until he caused his land to be surveyed when it was easily determined. But his uncertainty was not the defendants' uncertainty, and there is not the slightest evidence that they considered that their northern boundary line was uncertain in its location. Therefore, the acquiescence of the defendants in the acts of the plaintiffs in their exercise of dominion over the strip might make against them for their failure to assert their right, if title were claimed by adverse possession, a claim which has heretofore been said could not, in this instance, be sustained. But it is without meaning or potency under the contention of an agreed boundary line because, as has been said and shown, an agreement fixing a common boundary line can only have efficacy where the true boundary is either uncertain in fact or is believed by the contracting parties to be uncertain.''

Mrs. Main, one of the present owners of the quarter section, testified that until 1963 all the crops on defendants' property had been annual, and there were no permanent improvements on the strip of land in question; she testified that plaintiffs never gave permission to appellants to use plaintiffs' land, that plaintiffs regularly paid all of the taxes on the quarter section, that annual crops as they were being produced on the strip were of little consequence and use of this small strip of land seemed unimportant until appellants began planting a permanent crop, and at that time plaintiffs instructed their attorneys to make a demand upon appellants to remove themselves from the premises.

In 8 California Jurisprudence, Second Edition, Boundaries, section 38, pages 761-763, it is said: ''One of the requisites to the valid establishment of a boundary line by oral agreement between adjoining owners, in the absence of adverse possession or estoppel, is uncertainty or dispute as to the location of the true boundary. The requirement is the same when it is sought to establish a line on the basis of an implied agreement based on recognition and acquiescence for the requisite period of time. Accordingly, an agreement fixing a boundary is not valid for any other purpose than that of settling an uncertainty in regard to a common boundary. If adjoining owners agree orally on a division line, knowing that it is not the true line, and with a purpose of thereby transferring from one of them to the other a body of land which they know his true

line does not bound, the agreement will not be enforced. Land cannot be conveyed by the device of moving fences or changing the marks or monuments which define its boundaries. To allow parties whose common boundary line is not uncertain or in dispute to give title in such a manner would involve recognition of a mode of transferring title not countenanced by law.

''Uncertainty sufficient to satisfy the rule as to agreed boundaries exists where at the time of the agreement there is a lack of knowledge by both parties of where the line is or should be drawn. An actual dispute in the sense of a quarrel or ill feeling is not essential. A doubt as to the location of a common boundary such as will sustain a finding of an agreed boundary may arise from a believed uncertainty which may be proved by direct evidence or inferred from the circumstances existing at the time of the asserted agreement. The fact that an actual survey is possible is not conclusive of the question whether a doubt existed as to the location of a common boundary so as to sustain a finding of an agreed boundary.

''Uncertainty need not appear from the deed or from an attempt to make a survey. Nor is it essential that the true location of the boundary be absolutely unascertainable, mere uncertainty being sufficient. *But a boundary line is not unknown or uncertain within the rule where the fact that the agreed line is not the true line is known to any party, where an accurate description of the true line may be ascertained from fixed existing government monuments and field notes*; or where a boundary fence is built on what the parties suppose to be the true line, and there is no dispute.'' (Italics added.)

There is no evidence that the parties ''agreed'' upon a dividing line. The dirt road on plaintiffs' land was a convenient way for vehicles to enter upon the property; it is common for dirt roads to spring into existence next to power lines or pipelines or any obvious physical mark in large areas of farming. As is obvious from the testimony, the dry farming of annual crops would lend itself easily to just such a situation as developed here around the pipeline, power line, and road, without any agreement that these physical marks on plaintiffs' land should designate a boundary on their land.

The plaintiffs did not have to take affirmative action in the circumstances while the occupation was '' 'not of a nature to ripen into a valid adverse title.' '' (*Wareham* v. *Randolph*, 184 Cal.App.2d 218, 227 [7 Cal.Rptr. 483] ; *Farmers' Loan &*

*Trust Co.* v *Denver L. & G. R.R. Co.*, 126 F. 46, 53 [60 C.C.A. 588]; *Hays* v. *Marsh*, 123 Iowa 81 [98 N.W. 604].)

The orange trees were planted in 1963; appellants were immediately told they were trespassing; they would not acknowledge the surveyed boundary; plaintiffs brought suit in 1965; the judge found no laches on the part of plaintiffs and the evidence presents no showing of an abuse of discretion in the finding of the court. (*Wilkerson* v. *Thomas*, 121 Cal.App.2d 479, 490 [263 P.2d 678].) Appellants put their permanent improvements upon plaintiffs' strip of land with full knowledge and warning. The evidence does not indicate any error in the judgment.

The judgment is affirmed.

Gargano, J., concurred.

Stone, J., deeming himself disqualified, did not participate.

A petition for a rehearing was denied January 16, 1968. Stone, J., did not participate therein. Appellants' petition for a hearing by the Supreme Court was denied February 14, 1968.