Filed 3/19/26  WCST Enterprises v. Ling CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| WCST ENTERPRISES LLC,, Plaintiff and Respondent, v. BERIT LING, Defendant and Appellant. | G064506 (Super. Ct. No. 30-2019-01044486) O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Andre De La Cruz, Judge. Affirmed.

Schiffer and Eric M. Schiffer for Defendant and Appellant.

Law Offices of Fred S. Pardes and Fred S. Pardes for Plaintiff and Respondent.

\*          \*          \*

The parties are neighbors that have been fighting over a parking space in their condominium complex (the complex) for nearly a decade. Maury Loomis purchased Unit 38 through plaintiff WCST Enterprises LLC (WCST) in 2018. Defendant Berit Ling bought Unit 39 in 1998. Across from Units 38 and 39 is a freestanding two-car garage (the two-car garage), which contains two parking spaces known as 38G-a and 39G-a. After purchasing Unit 39, Ling used the entire two-car garage (spaces 38G-a and 39G-a) until 2018, when WCST's predecessor in interest asserted that his grant deed conveyed garage space 38G-a, i.e., half the two-car garage. Before this issue was resolved, WCST purchased Unit 38 and then sued Ling to quiet title to garage space 38G-a.[1]

The trial court initially found in favor of Ling, but we reversed the judgment on appeal. After a second trial, the court ruled in favor of WCST based on its grant deed, which conveyed it a fee interest in garage space 38G-a. Ling appeals the resulting judgment.

Ling makes several arguments in this appeal. First, she claims WCST's quiet title claim was barred by Code of Civil Procedure section 318's five-year statute of limitations.[2] We conclude WCST's limitations period did not expire because it was the legal owner of garage space 38G-a, and Ling did not show that she had adversely possessed the space. Second, Ling contends WCST should be estopped from asserting ownership of garage space 38G-a under the agreed-boundary doctrine. But Ling has failed to show this

---

[1] This case involves several garage spaces with similar number and letter designations. As such, we underline all further instances of the disputed garage space, 38G-a, to improve readability.

[2] All undesignated statutory references are to the Code of Civil Procedure.

2

doctrine has any bearing in this case. Third, Ling argues that the court improperly found garage space 38G-a was property to be owned in fee rather than an exclusive common use area. We conclude the trial court's finding is supported by substantial evidence. Finally, we reject Ling's contention that the trial court erred by failing to issue a statement of decision. Ling's request was untimely, so the court properly denied it. Accordingly, the judgment is affirmed.

FACTS AND PROCEDURAL HISTORY

I.

THE DISPUTE'S BACKGROUND

The parties generally agree on the facts underlying the dispute, which were recited in our prior opinion in this case, *WCST Enterprises, LLC v. Ling* (Feb. 23, 2023, G060377) [nonpub. opn.] (*WCST Enterprises*).

The complex was developed by the Huntington Harbor Corporation (the Huntington Corporation) in the 1960s. In 1965, the Huntington Corporation recorded a plan for the complex (the Plan), a map of the complex (the Map), and the governing documents for the complex's homeowners association (the CC&Rs). (*WCST Enterprises*, *supra*, G060377.)

The complex contains dozens of units and detached one-car and two-car garages that are each assigned to various units. WCST owns Unit 38, and Ling owns Unit 39. "Units 38 and 39 are adjoining two-story residences that along with several other units in the same building form a row of condominiums. Units 36 and 37 are in that same row of adjoining units and . . . share what looks to be a two-car garage. Units 36 and 37 are smaller than Units 38 and 39 and are allocated only one garage parking space each, which may explain why the garage they share is labeled on the Map with '36G' and '37G,' whereas the [two-car] garage next to it bears the labels '[38G-a]' and

3

'39G-a.' In other words, Units 36 and 37 come with only one parking space each, thereby obviating the '-a' and '-b' subdesignations that may have been deemed necessary for units with two parking spaces in separate garages."[3] (*WCST Enterprises*, *supra*, G060377.)

The image below from the Plan shows Units 37, 38, 39, and 40, which are across from garage spaces 35G, 36G, 37G, 38G-a, 39G-a, and 40G.[4] WCST and Ling dispute the ownership of garage space 38G-a, which is a single parking space in the two-car garage. The other space in the two-car garage is 39G-a, which is owned by Ling.

---

[3] The record refers to the relevant garage spaces using different lettered subdesignations. For example, portions of the record refer to the disputed garage space as "38G-a," "38G-A," or "38G(A)." For clarity, we will generally use the same lettered subdesignation throughout this opinion: a hyphen followed by a lowercase letter, e.g., 38G-a.

[4] We have added labels to this image for the reader's convenience.

4



"[I]n addition to [the two-car garage] labeled [above] as '[38G-a]' and '39G-a' (separated by the draftsman's dividing line), there are two single-car garages in the complex that have ['38G'] or ['39G'] in their designations on the Map. One is labeled '38G-b' and the other is labeled '39G-b.' These two separate single-car garages are several hundred feet away from Units 38 and 39. [¶] [The two-car garage] is much closer. . . . [It] 'is directly across from' Units 38 and 39, and therefore 'easily accessible . . . for parking cars, dropping off groceries, and would be the next best thing to having an

5

attached garage.'" (*WCST Enterprises*, *supra*, G060377.) The image below shows the location of Unit 38 and garage spaces 38G-a and 38G-b.



Ling has owned Unit 39 since 1998. She started using both spaces in the two-car garage (spaces 38G-a and 39G-a) after she purchased the unit. (*WCST Enterprises*, *supra*, G060377.) "Her grant deed identifies . . . the accompanying garage [for her unit] simply as '39G.'" (*Ibid*.) However, "the original 'Corporation Grant Deed' that passed the Unit 39 property to its first owner conveyed an interest not in a garage identified as '39G,' but in 'Garages [39G-a] and [39G-b] as shown on the [P]lan.'" (*Ibid*.)

"About 20 years after Ling purchased her unit, but before WCST came on the scene, the owners in her row of condominium units discovered

discrepancies between the garages identified as theirs in their deeds and the ones they were actually using. WCST's predecessor in interest in Unit 38 was Robert Russell. . . . 'Apparently, Mr. Russell had access [to] and was using Garage spaces [36G] and [37G]. The dispute over the Unit 38/39 garage arose when a neighbor while reviewing his grant deed discovered that he was improperly using his space instead of garage space [37G] as identified in his deed. This information was shared with another neighbor whose deed reflected [36G]. Mr. Russell voluntarily vacated [36G] and [37G], and started using single car garage space [38G-b] (which is identified in his deed), and [39G-b] (Ling's second single car garage space) neither of which are located near Unit 38.' Further, 'Russell['s] . . . grant deed . . . identifies Garage [38G-a and 38G-b]' as his." (*WCST Enterprises*, *supra*, G060377.)

"Ling acknowledged Russell spoke to her 'more than once' about his belief that garage space [38G-a] in [the two-car garage] belonged to him. Soon after his fruitless conversations with Ling, Russell sold Unit 38 to WCST." (*WCST Enterprises*, *supra*, G060377.) WCST is solely owned by Loomis, who formed the entity to purchase Unit 38 "'as a primary residence for Loomis and his wife. . . . At the time Unit 38 was purchased, it was disclosed to WCST that Unit 39 had been in possession of [the entire] two-car garage located across the driveway from the Units.'" (*Ibid.*) "'WCST at the time of sale was fully aware that litigation to quiet title to the garage space [38G-a] might be required.'" (*Ibid.*)

After WCST purchased the property, "Ling and Loomis 'were unable to come to any agreement regarding a shared use of the [two-car] garage,' and, indeed, 'the relationship between the parties has been strained from day one.'" (*WCST Enterprises*, *supra*, G060377.)

"WCST filed suit in January 2019. Its first amended complaint alleged causes of actions against Ling for (1) ejectment, (2) quiet title, (3) violation of the CC&R's, and (4) trespass." (*WCST, supra*, G060377.)

## II.

## THE FIRST TRIAL

This case was initially tried remotely in November 2020, due to restrictions arising from the COVID-19 pandemic. At trial, WCST argued the disputed garage space, 38G-a, was property to be owned in fee, while Ling claimed it was a common area to which she had been granted exclusive use. (*WCST Enterprises, supra*, G060377.)

The trial court ruled in favor of Ling. It found garage space 38G-a was an exclusive use common area that had been transferred to Ling. (*WCST Enterprises, supra*, G060377.) However, the court's statement of decision did "not say explicitly that such a transfer of space [38G-a] was authorized by the Plan or CC&R's, or that such a transfer was the means by which WCST lost its exclusive-use common area interest on the [38G-a] side of the draftsman's dividing line in the [two-car] garage. Instead, the decision stated that 'the evidence supports a finding that Mr. Russell, [WCST's] predecessor[,] had *voluntarily relinquished* his use of garage space [38G-a], since he was using spaces [38G-b] and [39G-b] *which is what he transferred to WCST upon sale of Unit 38.*'" (*Ibid.*)

## III.

## THE PRIOR APPEAL

WCST appealed the judgment from the first trial, arguing the trial court erred by finding the garage spaces in the complex were common use areas. It also asserted that even "if the disputed [two-car] garage is considered an exclusive-use common area for one or more unit owners, but

not all, . . . nothing in the final decision sufficiently explains 'why Ling has superior rights to [garage space 38G-a] over those of [WCST].'" (*WCST Enterprises*, *supra*, G060377.)

We agreed with the latter argument, so we reversed the judgment and remanded the matter for further proceedings. Our opinion explained "that the final statement of decision does not 'set forth a specific legal and factual analysis' adequate to confer on Ling's 'superior rights to [38G-a] over those of Loomis.'" (*WCST Enterprises*, *supra*, G060377.) We gave the trial court the option on remand to either "set forth sufficient findings of fact and law to support its decision" or "to revisit its factual and legal findings on a blank slate." (*Ibid*.)

## IV.

### THE SECOND TRIAL

The case was reassigned to a new judge on remand. The court advised the parties that it would "proceed with a trial de novo on a blank slate. No prior carryovers from prior testimony will be considered and the court will revisit all issues, controverted or otherwise, factual or legal, on a blank slate." The court also bifurcated the second trial to try the quiet title claim first. After this issue was tried, WCST would have the option to pursue its remaining claims.

At trial, Ling presented evidence that she had exclusively used garage space 38G-a for 20 years and had improved the two-car garage in good-faith reliance on her belief that she had exclusive use of it. She also claimed WCST's quiet title claim was barred by the five-year statute of limitations in section 318, laches, and/or waiver through inaction.

Both parties requested a statement of decision. WCST orally requested one during its closing argument, prior to submission of the case.

9

Ling submitted a written request *after* the case had been submitted. The court denied both requests. WCST had not identified the disputed issues as to which it was seeking a statement of decision, and Ling's request was untimely.

The court then provided an oral ruling quieting title in WCST's favor. It found the garages in the complex are property to be owned in fee rather than common areas. It then observed that Ling's grant deed conveyed her "Garage 39G" but explained that "39G is incapable of being conveyed because 39G [does] not exist." "[E]ither there was no conveyance of any garage space [to Ling] because 39G does not exist or the common sense result is that the preparer of the Ling grant deed [in] 1998 simply failed to identify that 39G was comprised of [39G-a] and [39G-b] as those two spots are associated with Unit 39 as set forth in exhibits 9, 10, 11 and 12."

In contrast, the trial court observed that WCST's grant deed "clearly indicates, as should have been the case for [Ling] with respect to [her] grant deed of 1998, that the garage space, [38G-a and 38G-b] did come with Unit 38. Therefore, WCST is the legal and proper owner of garage [38G-a] and [38G-b]."

The court also concluded that WCST's quiet title claim was not barred by the statute of limitations because "[WCST] did not possess at least half of 38G, which is comprised of [38G-a] and [38G-b] . . . . [WCST] was not in possession of a portion [of 38G] that rightfully belonged to WCST."

After receiving the above ruling, WCST agreed to waive its remaining claims and submitted a proposed judgment. Ling made several objections to the proposed judgment, two of which are relevant here. First, she claimed the proposed judgment did not set forth adequate facts explaining why section 318's five-year statute of limitations did not begin to

10

run in 1998 when she purchased Unit 39. Second, she argued the proposed judgment did not have enough facts to support a finding that she "did not adversely possess garage [38G-a] during the applicable 5-year limitations' period." (Italics omitted.)

The trial court overruled Ling's objections and entered judgment quieting title in WCST's favor (the judgment). It did not explain its reasons for overruling the objections. After judgment was entered, Ling filed a motion for a new trial, which the court denied.

Ling appeals the judgment on several grounds. First, she claims WCST's quiet title claim was barred by section 318's five-year statute of limitations. Second, she argues the evidence at trial showed she had adversely possessed garage space 38G-a. Third, she contends WCST was estopped from asserting ownership of garage space 38G-a under the agreed-boundary doctrine. Fourth, she claims the court erred by finding garage space 38G-a is property to be owned in fee and not an exclusive use common area. Finally, she asserts the court erred by failing to issue a statement of decision. As we explain below, Ling's adverse possession and estoppel arguments overlap with her statute of limitations argument.

DISCUSSION

We presume the trial court's judgment is correct, and Ling has the burden of affirmatively showing error. (*Starcevic v. Pentech Financial Services, Inc.* (2021) 66 Cal.App.5th 365, 374.) We will affirm the judgment if it is correct on any theory, regardless of the trial court's reasoning. (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.)

11

# I.

## STATUTE OF LIMITATIONS

"The limitations period for a quiet title cause of action depends on the underlying theory of relief." (*Kumar v. Ramsey* (2021) 71 Cal.App.5th 1110, 1122.) Ling claims the applicable limitations period is found in section 318. This statute provides that "[n]o action for the recovery of real property, or for the recovery of the possession thereof, can be maintained, unless it appear that the plaintiff, his ancestor, predecessor, or grantor, was seized or possessed of the property in question, within five years before the commencement of the action." (§ 318.) Ling maintains that her exclusive use of garage space 38G-a from 1998 to 2018 caused the statute of limitations to commence in 1998 and lapse in 2003.

While Ling exclusively occupied garage space 38G-a from 1998 to 2018, she did not have right of possession or seisin over it. Rather, "'seisin' or the right of possession *is in the legal owner*, even while an adverse claimant is actually occupying the land, and a showing of legal title is enough to satisfy section 318 of the Code of Civil Procedure." (*Schoenfeld v. Pritzker* (1967) 257 Cal.App.2d 117, 121, italics added; *Kasey v. Molybdenum Corp. of America* (9th Cir. 1964) 336 F.2d 560, 566 ["there is no question that if appellants still have legal title, they have seisin" under section 318].)

Significantly, the trial court found that WCST and its predecessors held legal title to garage space 38G-a from 1998 to present. Thus, they had seisin or possession of garage space 38G-a despite Ling's exclusive use of the space during this period. (*McKelvey v. Rodriquez* (1943) 57 Cal.App.2d 214, 223.) "'[T]his seisin [could] be destroyed only by establishing the fact that a title by adverse possession was acquired by the defendant.'" (*Ibid*; *Tobin v. Stevens* (1988) 204 Cal.App.3d 945, 949.) "[U]nless

12

and until the encroacher's use of the property ripens into title by adverse possession . . . , the legal title holder's right to bring an action to recover his or her property from the encroacher *never expires*. This must be so, 'otherwise, the record owner would be unable to recover possession, and a possessor would be unable to establish title.'" (*Harrison v. Welch* (2004) 116 Cal.App.4th 1084, 1095–1096, second word italics added.)

In sum, Ling could only prevail on her statute of limitations argument by proving that either (1) she had obtained title to garage space 38G-a through adverse possession at least five years before this lawsuit was filed, or (2) the trial court erred in finding WCST was the legal owner of the disputed space. (*Harrison v. Welch*, *supra*, 116 Cal.App.4th at pp. 1095–1096.) As we explain, she has not proved either.

*A. Adverse Possession*

Ling asserted adverse possession as an affirmative defense in her answer, and she had the burden of proving this defense at trial. (*Consumer Cause, Inc. v. SmileCare* (2001) 91 Cal.App.4th 454, 469.) She did not meet this burden. While Ling contends the trial court ignored evidence that she had adversely possessed garage space 38G-a, the record shows she did not raise this theory at trial.

Ling's trial brief did not mention adverse possession. It argued that Ling had possessed and exclusively used garage space 38G-a from 1998 to 2018, but it never connected this argument to adverse possession. Likewise, on the parties' list of controverted issues for trial, Ling claimed "that *only* the following issues are in controversy," and then failed to list adverse possession. (Italics added.) Ling also did not mention adverse possession in her opening argument. Instead, she claimed that (1) she had acquired title to "garage 39G" through her grant deed, (2) she had exclusively

13

used and possessed garage space <u>38G-a</u> for a 20-year period and had made improvements to it, and (3) WCST's quiet title claim was barred by the statute of limitations, laches, or waiver. She did not connect any of these arguments to adverse possession. Nor did her closing argument mention adverse possession.

Ling only argued for adverse possession *after* trial had concluded and *after* the court had ruled in WCST's favor. Specifically, she raised the argument in her objections to the proposed judgment and in her new trial motion. But she does not explain why the court was required to consider, or should have considered, a new argument made after trial.

In response, Ling claims that adverse possession was "thoroughly litigated and presented to the trial court on remand." But her only support for this assertion is a passing reference to adverse possession in the court's oral ruling. In discussing Ling's statute of limitations argument, the court explained that "there was no law presented to the court on [the statute of limitations] issue aside from a mere passing reference to CCP 318. However, [the court] did find one case [*People v. Chambers* (1951) 37 Cal.2d 552] that goes all the way back to 1951 wherein the court talks about tacking in connection with CCP 315 and 318. [¶] In that case, defendants would require tacking on limitation periods, i.e., adding together the time while it ran in favor of the defendant which plainly is not applicable except in adverse possession which is unavailable to defendant. Similarly, tacking is not available in this case as to defendant."

The above statement does not indicate that adverse possession was "thoroughly litigated," as Ling contends. Rather, the court only observed that tacking did not apply because "adverse possession [was] unavailable to defendant." It made no reference to Ling actually litigating that theory.

14

Based on the record, the most reasonable interpretation of the court's statement is that adverse possession was unavailable to Ling because she did not present that theory during trial.

Nor can Ling assert adverse possession for the first time on appeal. "'As a general rule . . . appealing parties must adhere to the theory (or theories) on which their cases were tried.'" (*Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 997.) Ling has not explained why this general rule should not apply here.

Besides, even if we considered this new argument, Ling has not established all the elements of adverse possession. For instance, she has not shown that she paid all taxes assessed on garage space 38G-a during the relevant period of adverse possession. (See *Main Street Plaza v. Cartwright & Main, LLC* (2011) 194 Cal.App.4th 1044, 1054 [listing adverse possession elements].) While Ling's appellate briefs assert that no taxes were assessed on the garage space, she has not cited any evidence in the record to support this claim.[5] Thus, she has failed to meet her burden of establishing this element. (*Mesnick v. Caton*, *supra*, 183 Cal.App.3d at p. 1260 ["The adverse claimant bears the burden to establish that no taxes were assessed against the land, or that if assessed he paid them"].)

## B. *Legal Title*

Ling also appears to contend that the trial court erred by finding WCST owned legal title to garage space 38G-a.

---

[5] Ling argues that WCST also failed to provide evidence at trial that it had paid property taxes for garage space 38G-a. But Ling had the burden of proving this element. (*Mesnick v. Caton* (1986) 183 Cal.App.3d 1248, 1260.) Thus, it is irrelevant that WCST did not produce such evidence.

First, Ling argues the trial court improperly quieted title in WCST's favor based on the weakness of her claim rather than the strength of its claim. We disagree. The court awarded WCST title to garage space 38G-a based on its grant deed, which conveyed garage spaces 38G-a and 38G-b. Thus, its decision was rooted in the strength of WCST's claim of legal title.

Second, Ling contends that "where the plaintiff relies on a paper title alone she bears the burden of tracing title (1) to the government; or (2) to a grantor in possession at the time of the conveyance to the plaintiff; or (3) to a source common to the chains of title of plaintiff and defendant . . . ." (Citing *Ernie v. Trinity Lutheran Church* (1959) 51 Cal.2d 702, 706, italics omitted.) Based on this rule, Ling claims that since WCST's predecessor did not possess garage space 38G-a when WCST acquired Unit 38, WCST's grant deed alone is insufficient to prove its ownership of the space.

Later cases have clarified the above rule: "'A plaintiff who relies on paper title alone (i.e.*,* who is not in possession) must, *when the defendant also asserts paper title,* trace title back to one of four sources: the government, a grantor in possession, a grantor common to plaintiff and defendant, or a grantor who had obtained a judgment quieting title.'" (*Tobin v. Stevens* (1988) 204 Cal.App.3d 945, 952.) Here, Ling's grant deed does not convey her an interest in garage space 38G-a. Rather, it only conveys an interest in "Garage 39G." Since Ling is unable to assert paper title to garage space 38G-a, the rule does not apply.

Besides, even if the above rule were to apply, WCST traced its title and Ling's title to a common source: the Huntington Corporation. The grant deeds from the Huntington Corporation to the initial owners of Units 38 and 39 were admitted at trial. These initial grant deeds support the trial court's conclusion that WCST owns title to garage space 38G-a. The grant

16

deed to the initial owner of Unit 38 conveyed title to garage spaces <u>38G-a</u> and 38G-b. The grant deed to the initial owner of Unit 39 conveyed title to garage spaces 39G-a and 39G-b. The record also contains evidence showing the chain of title from the initial owners of Unit 38 and Unit 39 to WCST and Ling, respectively.

II.

ESTOPPEL

Next, Ling posits that her use of garage space <u>38G-a</u> was based on an alleged agreement between the prior owners of Units 38 and 39 to trade spaces. She analogizes this alleged agreement to the agreed-boundary doctrine. Under this doctrine, a boundary line between adjoining properties may be conclusively established by the landowners' agreement when there is uncertainty over its location. (*Bryant v. Blevins* (1994) 9 Cal.4th 47, 54–55.) Ling appears to contend that the alleged agreement between the prior owners is comparable to the agreed-boundary doctrine and estops WCST from claiming ownership of garage space <u>38G-a</u>. Her argument has several flaws.

First, Ling did not raise this argument at trial, so we need not consider it. (*Nellie Gail Ranch Owners Assn. v. McMullin*, *supra*, 4 Cal.App.5th at p. 997.)

Second, Ling has not cited any evidence showing an agreement between the prior owners of Units 38 and 39. Thus, this argument has been waived. (*Cahill v. San Diego Gas & Electric Co.*, *supra*, 194 Cal.App.4th at p. 956.)

Third, this lawsuit does not involve a boundary dispute. It involves the ownership of garage space <u>38G-a</u>. Ling has not cited any authority in which the agreed-boundary doctrine has been applied outside a boundary dispute. Nor has she provided any reasoned argument as to why

17

this doctrine should be applied here. Thus, the argument is also waived for this reason. (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277.)

Fourth, even if the agreed-boundary doctrine applied here, Ling has not established all its elements. To apply the doctrine, there must "'be [1] an uncertainty as to the true boundary line, [2] an agreement between the coterminous owners fixing the line, and [3] acceptance and acquiescence in the line so fixed for a period equal to the statute of limitations or under such circumstances that substantial loss would be caused by a change of its position.'" (*Bryant v. Blevins*, *supra*, 9 Cal.4th at p. 55.) Ling has not shown that the prior owners of Units 38 and 39 were uncertain about the ownership of garage space 38G-a, or that they agreed to trade parking spaces to address any such uncertainty.

III.

COMMON USE

Ling contends the trial court erred by finding garage space 38G-a is property to be held in fee rather than an exclusive common use area. We conclude the court's finding is supported by substantial evidence. (See *Orange County Water Dist. v. Alcoa Global Fasteners, Inc.* (2017) 12 Cal.App.5th 252, 313 [substantial evidence standard applies to factual findings].)

Under the substantial evidence standard, "'the power of an appellate court *begins* and *ends* with the determination as to whether, *on the entire record*, there is substantial evidence, contradicted or uncontradicted, which will support the determination, and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. *If such substantial evidence be found, it is of no consequence that the trial court believing other*

18

*evidence, or drawing other reasonable inferences, might have reached a contrary conclusion.'"* (*Jameson v. Five Feet Restaurant, Inc.* (2003) 107 Cal.App.4th 138, 143.)

Here, the CC&R's define "COMMON AREAS OR COMMON AREA" to mean "[t]he entire project *excepting* therefrom all units, *garages* and patios." (Italics added.) Contrary to Ling's position, this evidence indicates that the garages in the complex were not intended to be common areas.

Further, the Plan explains "all areas shown on [the Plan] identified by the letter "G" are garage areas consisting of *a fee in air space* and are appurtenant and allocated to the units bearing the same numbers." (Italics added.) From this evidence, the court could reasonably conclude that garage space 38G-a was intended to be held in fee by the owner of Unit 38.

Finally, the initial grant deeds from the Huntington Corporation to the initial owners of Unit 38 and Unit 39 indicate that garage space 38G-a and 39G-a were intended to be owned in fee. The initial grant deed for Unit 38 conveyed its initial owner "that certain *fee estate . . .* consisting of" both Unit 38 and "Garage [38G-a] & [38G-b] as shown on the Plan." (Italics added.) Likewise, in the initial grant deed for Unit 39, the Huntington Corporation conveyed a "fee estate" in both Unit 39 and "Garage Space [39G-a] & [39G-b] as shown on the Plan."

IV.

STATEMENT OF DECISION

We find no error in the trial court's decision not to issue a statement of decision.

If a "trial is concluded within one calendar day or in less than eight hours over more than one day," a party's request for a statement of

19

decision "must be *made prior to the submission of the matter for decision*." (§ 632, subd. (a), italics added.)

Here, trial concluded within one calendar day. Ling concedes that she requested a statement of decision after the case was submitted. As such, her request was untimely, and the court did not err by denying it. (See, e.g., *In re Marriage of Gray* (2002) 103 Cal.App.4th 974, 980 [affirming trial court's denial of an untimely request for a statement of decision]; *R. E. Folcka Construction, Inc. v. Medallion Home Loan Co.* (1987) 191 Cal.App.3d 50, 51–52, 57 [same]; *In re Marriage of Steinberg* (1977) 66 Cal.App.3d 815, 822 [same].)

Citing *F.P. v. Monier* (2017) 3 Cal.5th 1099, Ling argues that we should review the trial court's decision for harmless error. But that case is inapposite. In that case, the defendant *timely* requested a statement of decision, and the trial court erred by failing to issue one. (*Id.* at pp. 1103–1104.) The Supreme Court held that this error was not reversible per se but subject to harmless error analysis. (*Id.* at p. 1102.) Unlike *F.P. v. Monier*, Ling's request was untimely, so the court committed no error for us to review.

V.

ATTORNEY FEES

WCST claims this appeal was frivolous and requests that we order Ling to pay its attorney fees as a sanction. (See Cal. Rules of Court, rule 8.276(a)(1).) We deny the request.

"[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637,

20

650.) "Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win on appeal. An appeal that is simply without merit is *not* by definition frivolous and should not incur sanctions. Counsel should not be deterred from filing such appeals out of a fear of reprisals." (*Ibid.*)

Nothing in the record indicates that Ling filed this appeal for an improper motive. Further, while we disagree with Ling's arguments, they are not so devoid of merit as to be frivolous. Notably, the trial court found in Ling's favor after the first trial. Given that result, it was not unreasonable for Ling to believe that she could successfully appeal the judgment from the second trial.[6]

---

[6] WCST also appears to assert that it is entitled to attorney fees under the Davis–Stirling Common Interest Development Act (Civ. Code, §§ 4000–6150). However, its argument does not explain how attorney fees are awarded under this statutory scheme. We will not consider this underdeveloped argument. (*Hernandez v. First Student, Inc.*, *supra*, 37 Cal.App.5th at p. 277.)

DISPOSITION

The judgment quieting title in favor of WCST is affirmed. WCST is entitled to its costs incurred in this appeal. WCST's request for attorney fees is denied.


MOORE, J.


WE CONCUR:


MOTOIKE, ACTING P. J.


GOODING, J.